## WELCH v. STATE.

No. 12995.

Court of Civil Appeals of Texas. Dallas.

Feb. 22, 1941.

Rehearing Denied March 15, 1941.

Byron Sachs and McCombs & Andress, all of Dallas, for appellant.

Gerald C. Mann, Atty.Gen., and Wm. J. Fanning, W. P. Watts, and Geo. W. Barcus, Assts. Atty. Gen., for appellee.

LOONEY, Justice.

T. J. Welch, for himself and on behalf of his wife, parents of Dorothy Welch, a minor, seventeen years of age, by permission of the 46th Legislature, brought this action for damages against the State of Texas and Dr. William Thomas, Superintendent of the Terrell State Hospital, established and maintained by the State for the care and treatment of insane persons, alleging in substance that the death of Dorothy occurred in a collision between an automobile owned and operated by Gus Darst and an automobile in which Dorothy and others were traveling, on a public highway in Dallas County, Texas; that Darst was an employee of the State Hospital, of which the defendant Thomas was superintendent—who, knowing that Darst was reckless, likely to become intoxicated and drive the automobile upon the highways recklessly, directed him to take several inmates of the Hospital in his (Darst's) car to the City of Dallas to witness a ball game; that Darst became intoxicated and, while returning from Dallas to Terrell at night, drove his car without

headlights, at a reckless speed, and, as the result of other acts of negligence, collided with the car in which Dorothy was riding, killing her almost instantly. Plaintiff's petition is replete with charges of negligence against Superintendent Thomas in employing Darst, in retaining him in the service of the State, knowing that he was a reckless driver, and in directing him to take the inmates of the institution to the ball game at Dallas.

The defendants answered separately; Thomas asserted his privilege to be sued in the county of his residence, and accordingly, venue of the case, as to him, was transferred to a proper court of Kaufman County; and as to the State, the court having sustained its general demurrer, and plaintiff declining to amend, the suit was dismissed, from which he appealed.

Plaintiff contends that, by virtue of the death statute, as amended in 1921, the State assumed liability for wrongful deaths occasioned by the negligence of its representatives, agents, or employees, therefore, plaintiff is entitled to recover of and from the State damages for the wrongful death of his minor daughter.

■ By repeated decisions of our appellate courts, the rule is well established that the State is not liable in damages for the negligence or misfeasance of its officials, agents or employees, unless such liability is voluntarily assumed by an act of the Legislature; that the doctrine of respondeat superior has no application whatever to the State, its exemption being based upon its sovereign character. See Brooks v. State, Tex.Civ.App., 68 S.W.2d 534, 535, writ refused; State v. McKinney, Tex.Civ. App., 76 S.W.2d 556; Martin v. State, Tex. Civ.App., 88 S.W.2d 131, writ refused. That this doctrine is prevalent the country over is shown by the following authorities: 59 C.J. § 337, p. 194; Carpenter v. Atlanta & C. A. L. Railway Co., 184 N.C. 400, 114 S.E. 693; Downs v. Lazzelle, 102 W.Va. 663, 136 S.E. 195; Riddoch v. State, 68 Wash. 329, 123 P. 450, 42 L.R.A.,N.S., 251, Ann.Cas.1913E, 1033; Shear v. State, 117 Neb. 865, 223 N.W. 130; Hart v. United States, 95 U.S. 316, 24 L.Ed. 479.

■ Maintenance by the State of hospitals and asylums for the care and treatment of the insane, being specifically provided for in the Constitution, is the performance of a governmental duty. Section 54 of Article 16 of the Constitution provides that: "It shall be the duty of the Legislature to provide for the custody and maintenance of indigent lunatics, at the expense of the State, under such regulations and restrictions as the Legislature may prescribe"; and by Sec. 48 of Art. 3, authority is given the Legislature to levy taxes and raise sufficient revenue for the care and maintenance of the insane. So, unless by the Act of 1921, the State assumed liability for wrongful deaths, occasioned by the negligence of its agents or representatives, plaintiff failed to allege a cause of action, and the court below did not err in sustaining the State's demurrer and dismissing the cause. The Act under consideration, as amended, is now Art. 4671, R.C.S., and, in so far as is pertinent, reads, as follows: "1. When an injury causing the death of any person is caused by the wrongful act, neglect, carelessness, unskilfulness, or default of another person, * * corporation, * * * his, its or their agents or servants, such persons, * * * corporation, * * * shall be liable in damages for the injuries causing such death. The term 'corporation,' as used in this article, shall include all municipal corporations, as well as all private and public and quasi public corporations, except counties and common and independent school districts."

Since the statute was amended, making municipal corporations liable in damages for wrongful deaths, several death cases have been brought against the State, but, in each, the State was held not liable, under the common-law doctrine that recoveries could not be had for the death of any one. Although in these cases the statute in question was not brought under discussion, yet, in holding the State not liable, necessarily the phrase "municipal corporations," used in the Act, was held not to include the State. See State v. Brannan, Tex.Civ. App., 111 S.W.2d 347, writ refused, and Matkins v. State, Tex.Civ.App., 123 S.W. 2d 953, application for writ dismissed.

However, counsel for plaintiff forcefully and ably contend that, as it was not excepted from the provisions of the Act, as were counties and school districts, the State waived its common-law immunity and assumed liability for wrongful deaths caused by the negligence of its representatives, agents, etc.; reduced to its simplest statement, plaintiff's contention is, that being a municipal corporation and not excepted from the provisions of the statute, the State is within the letter, intent and purpose of the statute.

■ Although the word "municipality" has been used by courts and text-writers as sufficiently broad in meaning to include a sovereign state, yet, in its general acceptation, the word is not given such meaning (see 43 C.J., p. 72, § 10). As generally understood, the phrase "municipal corporation" refers to an organized body, consisting of the inhabitants of a designated area—subdivision of the State, created by the Legislature, that is, a legal entity possessing certain delegated powers (see 19 R.C.L., p. 688, § 2), and is defined in 30 T.J., p. 12, § 2, as follows: "A municipal corporation, in the strict and proper sense of the term, is the body politic and corporate constituted by the incorporation of the inhabitants of a definite locality for the purposes of local government—the organization of a certain geographical district under authority of law.". In Trevino v. City of San Antonio, Tex.Civ.App., 269 S.W. 1067, 1069, writ refused, the San Antonio Court, quoting from Dillon on Municipal Corporations, vol. 1, 5th Ed., § 31, p. 58, said: "A municipal corporation, in its strict and proper sense, is the body politic and corporate constituted by the incorporation of the inhabitants of a city or town for the purposes of local government thereof. Municipal corporations, as they exist in this country, are bodies politic and corporate of the general character above described, established by law partly as an agency of the state to assist in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town, or district which is incorporated." Although the Legislature is authorized to waive the State's immunity from such liability, its intention to do so should appear by clear and unambiguous language. We do not think the Act in question manifests such an intention, or contains any language disclosing a purpose on the part of the Legislature to create against the State a new and heretofore unrecognized liability. As stated in 59 C.J., pp. 195, 196, § 339: "The State, not being a municipal corporation, is unaffected by statutory provisions rendering such corporations liable, and a statute authorizing suits or claims against a state does not render the state liable in tort for the negligence or misconduct of officers or agents of the state unless the state has, by statute, expressly agreed to be liable on such claims * * *." As before stated, the phrase "municipal corporation," used in certain connections has been construed to include the sovereign state, yet such is unusual and out of the ordinary, the general rule being that, in its ordinary and usual acceptation, the phrase "municipal corporation" refers to a body politic and corporate, created by the Legislature for purposes of local government, and, in that sense, we think the phrase was used in the Act in question.

We think the Constitution clearly indicates the meaning that should be given the phrase "municipal corporation" when employed in legislation. Sec. 52 of Art. 3 provides that: "The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of vatue (value) in aid of, or to, any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company" etc., and Art. 11 expressly devoted to the subject "municipal corporations," mentioning cities, towns and other municipal corporations, provides in Sec. 3, among other things, that, "No county, city, or other municipal corporation shall hereafter become a subscriber to the capital of any private corporation * *", etc.

■ While in a latitudinous sense, the State may be found within the letter of the phrase "municipal corporation," yet, as generally used in law literature and in legislation, we do not think such is true; especially, in view of the clearly indicated constitutional meaning of the phrase, we do not think it is true with reference to legislation in this State. A pertinent rule of statutory construction is found in 59 C.J., p. 964, § 573, as follows: "In pursuance of the general object of giving effect to the intention of the legislature, the courts are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof, it being generally recognized that whatever is within the spirit of the statute is within the statute although it is not within the letter thereof, while that which is within the letter, although not within the spirit, is not within the statute. Effect will be given the real intention even though contrary to the letter of the law."

Therefore, we do not think the trial court erred in sustaining the general demurrer and in dismissing plaintiff's cause; hence, affirm the judgment.