**KERRVILLE STATE HOSPITAL,**
Petitioner,

v.

**Rose M. FERNANDEZ, Respondent.**

**Texas Parks and Wildlife Department,**
Petitioner,

v.

**Rogelio A. Gonzalez, Respondent.**

Nos. 98–1238, 99–0141.

Supreme Court of Texas.

Argued Nov. 10, 1999.

Decided July 6, 2000.

Rehearing Overruled Oct. 26, 2000.

David G. Halpern, John Cornyn, Atty. Gen., Andy Taylor, David A. Talbot, Jr., Nelly R. Herrera, Austin, for petitioner.

Kenneth W. Howell. John Gonzales, John Gonzales & Associates, San Antonio, for respondent.

Chief Justice PHILLIPS delivered the opinion of the Court, in which Justice ENOCH, Justice ABBOTT, Justice HANKINSON, Justice O'NEILL, and Justice GONZALES, joined.

The Anti–Retaliation Law of the Texas Labor Code prevents a person from discharging or discriminating against an employee for filing a workers' compensation claim in good faith or hiring legal representation in such a claim. TEX. LAB.CODE § 451.001. That law clearly applies to private employers. We have also held that it applies to political subdivisions because the Legislature waived sovereign immunity. In these two cases consolidated for decision, we must decide whether state agencies are also liable for violations of the Anti–Retaliation Law. We hold that the State Applications Act waives state agencies' immunity under the Anti–Retaliation Law to the extent otherwise provided by the Texas Tort Claims Act. Therefore, we affirm the judgments of the court of appeals.

I

Rose Fernandez was employed by the Kerrville State Hospital as a nurse's aide. While on the job, she suffered injuries to her back and shoulder. She filed a notice of injury and claim for compensation with the Texas Workers' Compensation Commission. On February 17, 1992, her doctor released her to return to light duty work with restrictions. On April 5, 1992, while waiting for a light duty position to become available, she obtained a lump-sum settlement of her claim with the Workers' Compensation Division of the Attorney General's Office. On April 22, 1992, the Hospital terminated her employment because she failed to return to work with a full-duty release after the settlement.

Fernandez brought suit, alleging that the Hospital terminated her employment because she filed a workers' compensation claim. The Hospital moved to dismiss for lack of jurisdiction based on sovereign immunity, and the trial court granted its motion. The Fourth Court of Appeals reversed, holding that sections 15(b) and (c) of the State Applications Act waives the Hospital's immunity. 985 S.W.2d 121.

Rogelio Gonzalez was employed by the Texas Parks and Wildlife Department

("TP & W"). On July 27, 1990, he seriously injured his back and sought medical attention for his injuries. He alleges that when he returned to work, he asked that his medical bills be processed through workers' compensation insurance rather than his group health insurance policy. He claims that he did not file a workers' compensation claim, however, because his immediate supervisor, Ross Hartnett, strongly discouraged him from doing so. Gonzalez continued to work in pain until October 1990, when his physician instructed him not to work and referred him to an orthopedic specialist for further treatment. Gonzalez alleges that when he again requested permission to file a compensation claim, Hartnett told him he could not file a claim because the injury had already been reported as a non-job-related injury. On September 12, 1991, the Department placed Gonzalez on leave without pay for one year. In February 1992, his doctor released him to return to light duty work. He contends that TP & W refused him light duty work.

Gonzalez sued TP & W and Hartnett both individually and in his official capacity, alleging that their conduct violated the Anti–Retaliation Law. As in *Fernandez*, TP & W and Hartnett filed a joint motion to dismiss for lack of jurisdiction based on sovereign immunity. The trial court granted the motion as to TP & W, but denied it as to Hartnett. After the trial court severed the claims and rendered a final judgment for TP & W, Gonzalez appealed. Based on its decision in *Fernandez*, the Fourth Court of Appeals reversed the trial court's decision. —— S.W.3d ——, 1998 WL 904264.

Both TP & W and the Hospital (the "Agencies") appeal the court of appeals' decisions. We granted their petitions and consolidated the causes for argument and decision.

## II

### A

■ State agencies are immune from liability in Texas unless the Legislature has waived that immunity. *See Federal Sign v. Texas Southern Univ.*, 951 S.W.2d 401, 405 (Tex.1997); *Duhart v. State*, 610 S.W.2d 740, 741 (Tex.1980); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976). The courts of our state require clear and unambiguous legislative expression before they will hold that sovereign immunity has been waived. *See City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995); *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex.1989); *Duhart*, 610 S.W.2d at 742.

■ The clear and unambiguous requirement is not an end in itself, but merely a method to guarantee that courts adhere to legislative intent. Therefore, the doctrine should not be applied mechanically to defeat the true purpose of the law. Several years ago, we explained the primacy of legislative intent in deciding whether sovereign immunity has been waived:

> The rule requiring a waiver of governmental immunity to be clear and unambiguous cannot be applied so rigidly that the almost certain intent of the Legislature is disregarded. Legislative intent remains the polestar of statutory construction. We will not read statutory language to be pointless if it is reasonably susceptible of another construction. If a statute leaves no reasonable doubt of its purpose, we will not require perfect clarity, even in determining whether governmental immunity has been waived.

*Barfield*, 898 S.W.2d at 292 (citations omitted). In *Barfield*, we held that immunity had been waived because we could not discern another reasonable intent when provisions of the Political Subdivisions Law would otherwise have had no purpose at all. *Id.* at 296; *see also Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex.1994) (Uniform Declaratory Judgments Act waives governmental immunity for awards of attorney fees).

## B

The State Applications Act (SAA) is one of several statutes that require governmental entities to provide workers' compensation insurance coverage to their employees. The SAA applies to most state agencies, including both TP & W and the Hospital. *See* Tex. Parks & Wild.Code § 11.011; Tex. Health & Safety Code § 532.001(b)(4). The SAA incorporates many of the workers' compensation laws applicable to private employers. In addition, the SAA sets forth workers' compensation laws that only apply to covered state agencies.

As originally enacted in 1973, the SAA did not incorporate the Anti–Retaliation Law. *See* Act of May 10, 1973, 63rd Leg., R.S., ch. 88, § 16, 1973 Tex. Gen. Laws 195 (formerly codified as Tex.Rev.Civ. Stat. art. 8309g, § 15, current version at Tex. Lab. Code § 501.002).[1] Thus, it did not waive immunity for Anti–Retaliation Law claims. In 1981, the Legislature amended the SAA to adopt the Anti–Retaliation Law. *See* Act of June 10, 1981, 67th Leg., R.S., ch. 352, § 1, sec. 15(a)(5), 1981 Tex. Gen. Laws 937.[2] The SAA was amended again in 1989. *See* Act of Dec. 13, 1989, 71st Leg.2d C.S., ch. 1, § 15.44, 1989 Tex. Gen. Laws 1, 111. This version of the statute was in effect when Fernandez and Gonzalez were injured in 1992. Therefore, we focus our inquiry on whether the 1989 SAA waives state agencies' immunity for Anti–Retaliation Law claims.

Section 15 of the 1989 SAA stated:

(a) The following provisions of the Texas Workers' Compensation Act ... are adopted except to the extent that they are inconsistent with this Act:

(1) Article 1, except the definition of "employee" under Section 1.03....

(b) [The Anti–Retaliation Law] is adopted except to the extent it is inconsistent with this article. For purposes of that Act, the individual agency shall be considered the employer.

(c) Nothing in this Act or the Texas Workers' Compensation Act ... shall be construed to authorize causes of action or damages against the state or any agency, institution, board, department, commission, or employee of the state beyond the actions and damages authorized by the Texas Tort Claims Act....

(d) Wherever the word "insurer" or "employer" is used in the adopted law, the word "state," "division" or "director," whichever is applicable, is substituted for the purposes of this article.

Act of Dec. 13, 1989, 71st Leg.2d C.S., ch. 1, § 15.44, sec. 15, 1989 Tex. Gen. Laws 1, 111–12 (formerly codified as Tex.Rev.Civ. Stat. art. 8309g, § 15).[3]

## III

### A

The court of appeals in *Fernandez* began its analysis by holding, based on *Bar-*

---

1. The Anti–Retaliation Law was originally enacted in 1971. *See* Act of May 7, 1971, 62nd Leg., R.S., ch. 115, 1971 Tex. Gen. Laws 884 (formerly codified as Tex.Rev.Civ. Stat. art. 8307c). It has never been amended, but is now codified as Chapter 451 of the Texas Labor Code.

2. The 1981 SAA stated:

Sec. 15. (a) The following laws ... are adopted ...
(5) [The Anti–Retaliation Law]....
(b) Wherever the words "association," "insurer," "subscriber," or "employer" are used in the adopted laws, the word "state," "division" or "director," whichever is ap-

plicable, is substituted for the purposes of this article.
(c) For purposes of [the Anti–Retaliation Law], the individual agency shall be considered the employer.
*See* Tex.Rev.Civ. Stat. art. 8309g, § 15 (Vernon Supp.1986).

3. The 1989 version was recodified in 1993 as chapter 501 of the Texas Labor Code, and has been amended again twice. *See* Act of June 19, 1997, 75th Leg., R.S., ch. 1098, § 3, 1997 Tex. Gen. Laws 4223, 4231; Act of June 16, 1995, 74th leg., R.S., ch. 980, § 2.01, 1995 Tex. Gen Laws 4912, 4927. Because the SAA was not in the Labor Code in 1989, however, we do not refer to the Labor Code provisions.

*field,* that the mere incorporation of the Anti–Retaliation Law in the first sentence of Section 15(b) and the general definitions provision, Section 15(d), did not waive immunity. 985 S.W.2d at 125. Nevertheless, said the court below, by enacting the second sentence of Section 15(b) and Section 15(c) of the SAA, the "Texas Legislature left 'no reasonable doubt' that it intended to waive [state agencies' immunity]." *Id.* at 127–28. The purpose of section 15(b), the court determined, was to identify the individual agency for which the claimant worked, not the state as a whole, as the employer of a state employee. The court then asked: "[W]hy would the Legislature specify the proper defendant in an Anti–Retaliation Law suit if it did not intend to waive the covered state agencies' immunity from this type of suit?" *Id.* at 125. According to the court, it could only solve this "logical conundrum" by concluding that the Legislature intended to waive state agencies' immunity from anti-retaliation claims. *Id.* The court used the same analysis to conclude that section 15(c) also expressed the Legislature's intent to waive immunity: "If the Legislature did not intend to waive immunity to Anti–Retaliation suits, why would it have included a provision limiting an employee's actions and damages to those contained in the Tort Claims Act?" *Id.* at 126. Because it could discern no other plausible meaning of sections 15(b) and (c), the court held that the inference of waiver was unavoidable.

B

The Agencies assert that section 15(b) does not satisfy the clear and unambiguous requirement. They draw a distinction between the waiver we recognized in *Barfield* under the Political Subdivisions Law and the provisions of the SAA at issue here. Although both laws require the affected bodies to provide workers' compensation insurance coverage for their employees, the Agencies claim that certain language in the Political Subdivisions Law

not present in the SAA was dispositive to our *Barfield* holding. We disagree.

In *Barfield,* we held that both the 1981 and 1989 versions of the Political Subdivisions Law waived political subdivisions' immunity from liability for anti-retaliation violations. 898 S.W.2d at 296–98. Section 3(a)(5) of the 1981 Political Subdivisions Law provided that "if the city provides by Charter or ordinance for ultimate access to the district court for wrongful discharge, [the Anti–Retaliation Law] is not applicable." Act of June 10, 1981, 67th Leg., R.S., ch 352, § 3, sec. 3(a)(5), 1981 Tex. Gen. Laws 937, 937–38. By affording this choice to cities, we concluded that the Legislature must have intended to waive immunity:

> Now assuming that the Legislature did not waive governmental immunity in the Anti–Retaliation Law, as we have already concluded, it is inconceivable that the Legislature intended to afford cities the option of either voluntarily waiving immunity by making a minimal remedy available by charter or ordinance, or suffering adoption of the Anti–Retaliation Law with no waiver of immunity.... Why would the Legislature give cities the option of voluntarily waiving immunity or being forced not to waive it?

*Barfield,* 898 S.W.2d at 296.

The 1989 amendments deleted the election-of-recourse provision in section 3(a)(5), but they added an election-of-remedies provision prohibiting an employee from suing under both the Anti–Retaliation Law and the Whistleblower Act. *See* Tex. Lab.Code § 451.001 (Anti–Retaliation Law); Tex. Gov't Code § 554.002 (Whistleblower Act). Section 3(d) states that "[a] person may not bring an action for wrongful discharge under both [the Anti–Retaliation Law] and [the Whistleblower Act]." Act of December 13, 1989, 71st Leg., 2d C.S., ch. 1 § 15.47, sec. 3(d), 1989 Tex. Gen. Laws 1, 113. We also concluded that the Legislature had waived immunity by including this provision. Since immunity

had clearly been waived for the Whistleblower Act, we reasoned that the Legislature must have intended to waive immunity for the Anti–Retaliation Law because "it would make little sense to require an employee to elect between an action barred by immunity and one not barred." *Barfield*, 898 S.W.2d at 298.

The Agencies argue that *Barfield* turned on the presence of an election-of-recourse or an election-of-remedies provision. Although some courts of appeals have read *Barfield* in this manner, *Honhorst v. University of North Texas*, 983 S.W.2d 872, 874–75 (Tex.App.—Fort Worth 1998, no pet.); *Southwest Texas State Univ. v. Enriquez*, 971 S.W.2d 684, 686–87 (Tex. App.—Austin 1998, pet. denied); *Carrillo v. Texas Tech Univ. Health Sciences Ctr.*, 960 S.W.2d 870, 872 (Tex.App.—El Paso 1997, no pet.); *Texas Dep't of Health v. Ruiz*, 960 S.W.2d 714, 716–17 (Tex.App.—El Paso 1997, pet. denied), this is an oversimplification. Our actual reasoning was that the Legislature must have intended to waive immunity because we could not "discern [any] sensible construction" of those provisions unless immunity had been waived. *Barfield*, 898 S.W.2d at 296–98. The mere presence or absence of an election-of-remedies provision was not the dispositive factor in *Barfield*, and the absence of such a clause in the SAA does not necessarily mean that the Legislature did not intend to waive state agencies' immunity. Instead, both in *Barfield* and here, we must look at whether a statute makes any sense if immunity is not waived.

The Agencies argue that section 15(b) does make sense without a finding of waiver. They insist that while section 15(b) designates the individual agency as the proper defendant in an Anti–Retaliation suit, it only does so in the event that a future Legislature waives immunity by statute or gives an individual employee consent to sue the State for Anti–Retaliation Law violations. Since section 15(b) can be interpreted in a manner that does not require a finding of waiver, it cannot satisfy the clear and unambiguous requirement. We disagree.

The Agencies cite *Duhart v. State*, 610 S.W.2d 740, 742–43 (Tex.1980) and *Barfield*, 898 S.W.2d at 295–96, for the proposition that a reasonable interpretation of a specific statutory provision can depend on possible acts of a future legislature. Neither *Duhart* nor *Barfield* supports the Agencies' argument. In *Duhart*, we construed a statute providing workers' compensation benefits to state highway employees that adopted an exemplary damages provision of the Workers' Compensation Law. We held that the incorporation of one provision into another law, without more, did not clearly and unambiguously waive the State's immunity from liability for exemplary damages. *Duhart*, 610 S.W.2d at 742–743. Although not necessary to our decision, we went on to speculate that the exemplary damages provision was incorporated in case a future Legislature waived the State's immunity. *Id.* at 743. In *Barfield*, we referenced this statement while rejecting the argument that incorporation of the Anti–Retaliation Law alone waived immunity. 898 S.W.2d at 295–96.

Here, we are not merely dealing with a provision that incorporates another statute. Far from merely incorporating the Anti–Retaliation Law into the SAA, the second sentence of section 15(b) actually identifies the agency as the employer. This is a clearer expression of intent than mere incorporation. Furthermore, we do not think it reasonable to conclude that the Legislature would allocate its limited resources during a session to write a specific provision that lacks any effect now and possibly for all time. Instead, we give section 15(b) current meaning, and we conclude, as we did with similar provisions in *Barfield*, that it has no meaning absent a waiver.

## C

Section 15(b) designates the individual state agency as the employer for purposes

of the Anti–Retaliation Law. Like the provisions of the Political Subdivisions Act discussed in *Barfield,* section 15(b)of the SAA makes no sense unless the Legislature has waived immunity. Why would the Legislature designate an individual state agency as the employer for purposes of a law creating a cause of action if the agency cannot be sued for that cause of action? Similarly, section 15(b) contemplates that the individual agency must be a party to an anti-retaliation suit. We have previously held that making a state entity a necessary party evidences intent to waive immunity. *See Leeper,* 893 S.W.2d at 446. We therefore conclude that there is no other sensible construction of section 15(b). *Barfield,* 898 S.W.2d at 297; *see also* Op. Tex. Att'y Gen. No. DM–214 (1993) (advising state agencies not to terminate injured employees because of Anti–Retaliation Law concerns); Op. Tex. Att'y Gen. No. JM–227 (1984) (stating the Anti–Retaliation Law applies to state employees).

The overall structure of workers' compensation law also suggests this conclusion. In the 1973 SAA, the Legislature waived state agencies' sovereign immunity to allow injured workers to bring workers' compensation claims. *See* Act of May 15, 1973, 63 rd Leg., R.S., ch.88, § 16, sec. 11, 1973 Tex. Gen. Laws 187, 197 (formerly codified as Tex.Rev.Civ. Stat. Ann. art

8309g, § 11, current version at Tex. Lab. Code § 501.022) (stating that an injured employee is entitled to compensation); *see also Barfield,* 898 S.W.2d at 294 (stating Political Subdivisions Law waived immunity for general compensation claims). Also in 1973, the Legislature created the State Employees Workers' Compensation Division of the Attorney General's Office (the "Division") to handle workers' compensation claims. *See* Act of May 15, 1973, 63 rd Leg., R.S., ch.88, § 16, sec. 3, 1973 Tex. Gen. Laws 187, 195–96 *repealed by* Act of June 19, 1997, 75 th Leg., R.S., ch. 1098, § 6(3), 1997 Tex. Gen. Laws 4223, 4231 (formerly codified at Tex. Lab.Code § 501.042(a), (b)). The Legislature stated that the Director of the Division "shall act in the capacity of employer and insurer .... [and] shall act as an adversary before the board and courts, presenting the legal defenses and positions of the state as an employer and insurer." *See* Act of May 15, 1973, 63 rd Leg., R.S., ch.88, § 16, sec. 4, 1973 Tex. Gen. Laws 187, 197.[4]

In 1981, the Legislature amended the SAA to incorporate the Anti–Retaliation Law. *See* Act of June 10, 1981, 67 th Leg., R.S., ch. 352, § 1, sec. 15(a)(5), 1981 Tex. Gen. Laws 937. The 1981 Amendments also designated the individual state agency as the employer for purposes of that law. *Id.* § 2, sec. 15(c).[5] By designating the

---

[4]. The framework for handling workers' compensation claims has changed since 1989. In 1995, the Legislature amended chapter 501 of the Labor Code to limit the Division's role and increase state agencies' responsibilities. The Legislature limited the Director of the Division to acting in the capacity of the insurer. *See* Act of June 16, 1995, 74 th Leg., R.S., ch. 980, § 2.03, 1995 Tex. Gen. Laws 4912, 4927 *repealed by* Act of June 19, 1997, 75 th Leg., R.S., ch. 1098, § 6(3), 1997 Tex. Gen. Laws 4223, 4231 (formerly codified as Tex. Lab.Code § 501.042). The 1995 amendments provided that the individual state agency would act as the employer for purposes of the SAA. *See* Act of June 16, 1995, 74 th Leg., R.S., ch. 980, § 2.01, 1995 Tex. Gen. Laws 4912, 4927 (codified as Tex. Lab.Code § 501.002(b)). Section 501.002 now states that "[f]or the purposes of this chapter and [the Anti–Retaliation Law], the individual state agency shall be considered the employer." Tex. Lab.Code § 501.002(b). The changes are effective for injuries occurring after September 1, 1995. *See* Act of June 16, 1995, 74 th Leg., R.S., ch. 980, § 2.05, 1995 Tex. Gen. Laws 4912, 4927.

In 1997, the Legislature dissolved the Division and replaced it with the State Office of Risk Management. *See* Tex. Lab.Code § 412.011. The director of this office now acts in the capacity of the insurer. *Id.* § 412.041(g). The individual state agencies still act as the employer for purposes of the SAA and the Anti–Retaliation Law.

[5]. Section 15(c) of the 1981 Act became section 15(b) of the 1989 Act. *See* Act of Dec. 13, 1989, 71 st Leg., 2d C.S., ch. 1, § 15.44, sec. 15(b), 1989 Tex. Gen. Laws 1, 112.

individual state agency as the "employer" for purposes of the Anti–Retaliation Law, the Legislature was distinguishing between general workers' compensation claims, for which the director of the Workers' Compensation Division is the employer, and anti-retaliation claims, for which the individual agency is the employer. By making this designation, the Legislature contemplated that state agencies would be amenable to anti-retaliation claims. The Legislature would not have done so if state agencies were immune from Anti–Retaliation Law claims. Thus, section 15(b) would have no purpose if the Legislature did not intend to waive immunity. *See Barfield*, 898 S.W.2d at 292; *Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex.1987) (statutory language will not be rendered meaningless if it can be reasonably construed). We hold that section 15(b) leaves no reasonable doubt that the Legislature intended to waive state agencies' immunity from Anti–Retaliation Law claims. *Barfield*, 898 S.W.2d at 292.

Relying on *Barfield*, the dissent urges that defining the state agency as the "employer" does not waive immunity because "employer" is not used in the Anti–Retaliation Law. The absence of the term "employer" in the Anti–Retaliation Law does not have the same significance in this case as it did when we interpreted the Political Subdivisions Law in *Barfield*. The Political Subdivisions Law provision under scrutiny there provided that when the statutes adopted by the Political Subdivisions Law, including the Anti–Retaliation Law, used the words " 'association,' 'subscriber,' or 'employer,' or their equivalents . . . , they

shall be construed to and shall mean 'a political subdivision.' " Act of June 10, 1981, 67ᵗʰ Leg., R.S., ch. 352, § 3, sec. 3(b), 1981 Tex. Gen. Laws 937, 938. Because neither the operative word of the Anti–Retaliation Law—"person"—nor an equivalent was listed, we determined that it was not clear that the Legislature intended "political subdivision" to be considered a "person" under the Anti–Retaliation Law. *Barfield*, 898 S.W.2d at 295. As a result, we concluded that that provision did not express a clear intent to waive immunity. *Id.*

Unlike the cross-reference provision of the Political Subdivisions Law, Section 15(b) clearly contemplates that state agencies are covered persons under the Anti–Retaliation Law. We disagree with the dissent's characterization of section 15(b) as "virtually identical" to the cross-reference provision of the Political Subdivisions Law. The two provisions have completely different purposes. Unlike the cross-reference provision, section 15(b) does not provide instructions for substituting one word for another in a series of statutes. Instead, section 15(b) provides instructions for how to treat state agencies under a specified statute.[6] If state agencies were not to be included in the term "person," the Legislature would have had no reason to designate them as employers while specifically referencing the Anti–Retaliation Law.

The dissent would have this Court ignore the plain language of section 15(b), leaving it with absolutely no purpose. We were unwilling to do so in *Leeper.* 893 S.W.2d at 446. And we were unwilling to do so in *Barfield*, where we said: "We will

---

[6.] Contrary to the dissent's assertion, the 1989 Political Subdivisions Law did not contain a provision stating that for purposes of the Anti–Retaliation Law, employer means political subdivision. Although the 1989 Political Subdivisions Law does contain a provision equating "employer" and "political subdivision," that provision only applies to laws incorporated in subsection (a); the Anti–Retaliation Law was incorporated in subsection (c). *Compare* Act of December 13, 1989, 71ˢᵗ Leg., 2d C.S., ch. 1, § 15.47, §§ 3(a)-(b), 1989 Tex. Gen. Laws 1, 113 (formerly codified as Tex.Rev.Civ. Stat. art. 8309h, §§ 3(a)-(b)), *with* Act of December 13, 1989, 71ˢᵗ Leg., 2d C.S., ch. 1, § 15.47, § 3(c), 1989 Tex. Gen. Laws 1, 113 (formerly codified as Tex.Rev.Civ. Stat. art. 8309h, §§ 3(c)). It was only after the 1993 non-substantive recodification of the Labor Code that "employer" means "political subdivision" for purposes of the Anti–Retaliation Law. *See* Tex. Lab.Code § 504.002(a)(8). We recognized this discrepancy in *Barfield.* 898 S.W.2d at 297–98.

not read statutory language to be pointless if it is reasonably susceptible of another construction." 898 S.W.2d at 292 (citing *Redmon,* 745 S.W.2d at 316; *Perkins v. State,* 367 S.W.2d 140, 146 (Tex.1963)).

There is, moreover, a reasonable explanation for why the Legislature used the term "employer" instead of "person" in section 15(b). The purpose of the section was to differentiate general workers' compensation claims from Anti–Retaliation Law claims. Since article 8309g used "employer" to describe the responsible entity for purposes of general workers' compensation claims, it made sense for the Legislature to use "employer" in section 15(b).

Finally, we note that the Legislature's purpose in enacting the Anti–Retaliation Law was to protect employees from retaliation. *See* TEX. LAB.CODE § 451.001 ("A person may not discharge or in any other manner discriminate against an *employee.* . . .")(emphasis added). An individual is only an "employee" with respect to his employer. As the court of appeals in *Fernandez* observed, "it is axiomatic that a 'person' cannot discriminate against an 'employee' unless the 'person' is an 'employer.'" 985 S.W.2d at 125. This Court has already recognized that the Legislature did not intend the word "person" in the Anti–Retaliation Law to be used in the broadest sense: "When considering the entire legislative history of [the Anti–Retaliation Law], the Legislature's intent is unmistakable: [the Anti–Retaliation Law] is intended to apply only to employees and employers who act under the Texas Workers' Compensation Act." *Texas Mexican Ry. Co. v. Bouchet,* 963 S.W.2d 52, 56 (Tex.1998); *accord Barfield,* 898 S.W.2d at 293 ("Forbidding retaliation against an employee for seeking monetary benefits under the Worker's Compensation Law presupposes that the employer is a subscriber."); *Stoker v. Furr's, Inc.,* 813 S.W.2d 719, 723 (Tex.App.—El Paso 1991, writ denied) ("A person could not discharge an employee unless that person was an employer."). Because the Legisla-ture enacted the Anti–Retaliation Law to restrain the actions of employers, we do not place significance in the Legislature's use of "employer" in section 15(b) rather than "person."

### D

Based on section 15(b), we conclude that the Legislature intended to waive state agencies' immunity for claims under the Anti–Retaliation Law. But this waiver need not be complete. In *Barfield,* for example, we concluded that section 3(a)(5) of the 1981 Political Subdivisions Law waived the immunity of political subdivisions only to the extent of providing reinstatement and back pay as remedies. 898 S.W.2d at 297. Since the 1989 Political Subdivisions Law did not indicate such a limited waiver, however, we concluded that the Legislature completely waived immunity in that law. *Id.* at 298. Here, the SAA does not contain a limitation on the extent of the waiver; therefore, we hold that the Legislature intended to waive immunity completely.

### E

█ The court of appeals also found waiver based on section 15(c) of the SAA. *Fernandez,* 985 S.W.2d at 126. That section provides that neither the SAA or the Workers' Compensation Act authorizes actions or damages against governmental entities except to the extent allowed by the Tort Claims Act. *See* Act of Dec. 13, 1989, 71st Leg., 2d C.S., ch. 1, § 15.44, sec. 15(c), 1989 Tex. Gen. Laws 1, 112; TEX. CIV. PRAC. & REM.CODE § 101.023–.024 (placing caps on actual damages and prohibiting punitive damages). We disagree with the court of appeals' reliance on this section. Section 15(c) is identical to section 3(c) of the Political Subdivisions Law. We construed section 3(c) of the Political Subdivisions Law in *Barfield,* where we stated that the reference to the Tort Claims Act in section 3(c) was troubling because a literal reading of that section would not allow an action under the Anti–Retaliation

Law or, for that matter, under the Workers' Compensation Act. 898 S.W.2d at 298. Because of the difficulty in construing that section, we could not say that it was a clear and unambiguous expression of waiver. Although we had difficulty interpreting section 3(c), we stated it could not be completely ignored. *Id.* at 299. With respect to an Anti–Retaliation Law claim, we held that section 3(c) limited recovery to the damages available under the Tort Claims Act. *Id.*

We construe section 15(c) of the SAA the same way. Section 15(c) is not a clear expression of waiver. It does incorporate the Tort Claims Act's damage caps. Thus, state agencies that violate the Anti–Retaliation Law may be held liable for damages subject to the limits on damages in the Tort Claims Act.

\* \* \*

For these reasons, we affirm the judgments of the court of appeals in both *Fernandez* and *Gonzalez.*

Justice OWEN issued a concurring opinion.

Justice HECHT issued a dissenting opinion, in which Justice BAKER, joined.

Justice OWEN, concurring.

Try as it might, the Court cannot distinguish our holding in *Barfield* that the Legislature did not waive sovereign immunity when it "adopted" the Anti–Retaliation Law in the Political Subdivisions Law and said that for purposes of the Anti–Retaliation Law, "employer" means "political subdivision." *City of LaPorte v. Barfield,* 898 S.W.2d 288, 295 (Tex.1995). The dissent ably exposes the flaws in the Court's reasoning today that the State *did* waive sovereign immunity when it similarly "adopted" the Anti–Retaliation Law in the State Applications Act and said that for purposes of the Anti–Retaliation Law, the individual agency shall be considered the employer. Because the Court refuses to acknowledge that one of our holdings in *Barfield* cannot be reconciled with its holding in this case, I cannot join the Court's opinion. The Court should be forthright in its discussion of *Barfield* and should say that we erred in that aspect of our analysis in *Barfield.*

On reflection, I believe that the Legislature did adequately express its intent to waive sovereign immunity for purposes of the Anti–Retaliation Law when it adopted that law as part of the Political Subdivisions Law. There could have been no other reasonable basis for including the language that it did in the Political Subdivisions Law. Our decision in *Barfield* was simply wrong on this score. But we should not repeat that error by holding that very similar language in the State Applications Act does not waive immunity. Accordingly, I join in the Court's judgment.

The Court's machinations in its failed attempt to distinguish *Barfield* are an implicit insult to the three courts of appeals who faithfully applied our *Barfield* analysis to the State Applications Act and held that immunity was not waived. *See Honhorst v. University of North Texas,* 983 S.W.2d 872, 874–75 (Tex.App.—Fort Worth 1998, no pet.); *Southwest Texas State Univ. v. Enriquez,* 971 S.W.2d 684, 686–7 (Tex. App.—Austin 1998, pet. denied); *Carrillo v. Texas Tech Univ. Health Sciences Ctr.,* 960 S.W.2d 870, 871–72, 875 (Tex.App.—El Paso 1997, pet. denied); *Texas Dept. of Health v. Ruiz,* 960 S.W.2d 714, 716–19 (Tex.App.—El Paso 1997, writ denied). We should be candid and admit that it was this Court that strayed in *Barfield,* not the courts of appeals in applying *Barfield.*

Justice HECHT, joined by Justice BAKER, dissenting.

Texas law is firmly settled that only the Legislature can waive governmental immunity,[1] and when it does so, it must use

---

1. *City of LaPorte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995); *Guillory v. Port of Houston*

clear and unambiguous language.[2]

The Anti–Retaliation Law does not waive governmental immunity. First enacted in 1971,[3] it currently provides in part:

§ 451.001. Discrimination Against Employees Prohibited

A person may not discharge or in any other manner discriminate against an employee because the employee has:

(1) filed a workers' compensation claim in good faith;

(2) hired a lawyer to represent the employee in a claim;

(3) instituted or caused to be instituted in good faith a proceeding under [the Texas Workers' Compensation Act]; or

(4) testified or is about to testify in a proceeding under [the Act].

§ 451.002. Remedies; Burden of Proof

(a) A person who violates Section 451.001 is liable for reasonable damages incurred by the employee as a result of the violation.[4]

The Legislature has "adopted" the Anti–Retaliation Law and several other statutes in the Political Subdivisions Law,[5] which applies the Texas Workers' Compensation Act to certain governmental entities. Section 504.002(b) of the Political Subdivisions Law states:

For the purpose of applying the [Anti–Retaliation Law and certain other statutes], "employer" means "political subdivision." [6]

In *City of LaPorte v. Barfield,* we held that this provision does not show a clear intent to waive immunity for anti-retaliation actions because the word "employer" nowhere appears in that statute.[7] Specifically, we explained that

section 504.002(b) states that in applying the Anti–Retaliation Law, "employer" means "political subdivision". As with the 1981 version of the Political Subdivisions Law, "political subdivision" is not equated with "person", which has always been the operative word of the Anti–Retaliation Law. Absent this equation, it is not entirely clear whether the Legislature intended to prohibit political subdivisions from retaliatory discharge.[8]

The Legislature has also "adopted" the Anti–Retaliation Law and other statutes in the State Applications Act, which applies the Texas Workers' Compensation Act to state employees not covered by more specific provisions. The State Applications Act and the Political Subdivisions Law originated and evolved in tandem. Both were first enacted in 1973 as part of the same legislation revising or replacing prior enactments making workers compensation coverage applicable to various governmental entities and private employers.[9] Both were amended by the same bill passed in 1981 [10] to "adopt" for the first time the Anti–Retaliation Law that had been enacted in 1971.[11] Both articles were again

*Auth.,* 845 S.W.2d 812, 813 (Tex.), *cert. denied,* 510 U.S. 820, 114 S.Ct. 75, 126 L.Ed.2d 43 (1993); *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976).

2. *Barfield,* 898 S.W.2d at 291; *Duhart v. State,* 610 S.W.2d 740, 742 (Tex.1980); *Texas Prison Bd. v. Cabeen,* 159 S.W.2d 523, 527–528 (Tex.Civ.App.—Beaumont 1942, writ ref'd); *Welch v. State,* 148 S.W.2d 876, 879 (Tex.Civ.App.—Dallas 1941, writ ref'd).

3. Act of April 22, 1971, 62nd Leg., R.S., ch. 115, 1971 Tex. Gen. Laws 884.

4. Tex. Labor Code §§ 451.001–.002(a).

5. Tex. Labor Code § 504.002.

6. *Id.* § 504.002(b).

7. 898 S.W.2d at 298.

8. *Id.*

9. Act of May 10, 1973, 63rd Leg., R.S., ch. 88, §§ 16–17, 1973 Tex. Gen. Laws 187, 195–200.

10. Act of May 31, 1981, 67th Leg., R.S., ch. 352, §§ 2–3, 1981 Tex. Gen. Laws 937, 937–938.

11. Act of April 22, 1971, 62nd Leg., R.S., ch. 115, 1971 Tex. Gen. Laws 884.

amended together in 1989 [12] and recodified in 1993.[13] Section 15(b) of the 1989 version of the State Applications Act, which applies to the present case, states:

> For purposes of [the Anti–Retaliation Law], the individual agency shall be considered the employer.

Purporting to follow *Barfield,* the Court holds today that this provision clearly and unambiguously *does* waive the State's immunity for anti-retaliation actions.

In this case and in *Barfield,* the Court has thus construed two sister statutes related in origin, language, development, and purpose. One contains the sentence on the left below, the other contains the sentence on the right:

| For the purpose of applying the [Anti–Retaliation Law and certain other statutes], "employer" means "political subdivision." | For purposes of [the Anti–Retaliation Law], the individual agency shall be considered the employer. |
|---|---|

The Court held in *Barfield* that the sentence on the left *does not* clearly and ambiguously waive governmental immunity. The Court holds today that the virtually identical sentence on the right *does* clearly and ambiguously waive governmental immunity. What justifies such disparate results?

Three things, says the Court. First, the reference in the sentence from the State Applications Act is to the Anti–Retaliation Law only, while the reference in the sentence from the Political Subdivisions Law is to the Anti–Retaliation Law and other statutes. In the Court's words: "Unlike the cross-reference provision [in the Political Subdivisions Law], section 15(b) [of the State Applications Act] does not provide instructions for substituting one word for another in a series of statutes." [14] I cannot fathom what difference this makes. The Political Subdivisions Law is no less definite just because it equates "employer" and "political subdivision" in more than one statute. This argument is pure makeweight.

Second, the Court explains, the Legislature had a reason to define "employer" in the State Applications Act that it did not have in the Political Subdivisions Law, which was "distinguishing between general workers' compensation claims, for which the director of the Workers' Compensation Division [of the Attorney General's Office] is the employer, and anti-retaliation claims, for which the individual agency is the employer." [15] This is all hypothetical, of course; no one involved in enacting and amending the State Applications Act ever actually said as much. And, the Court concedes in a footnote, the distinction it draws is no longer important because state agencies now act as the employer for purposes of compensation claims. But besides being made-up and no longer relevant, the Court's explanation for the need to define "employer" in the State Applications Act leaves one fact unexplained: why did the Legislature also define "employer" in the Political Subdivisions Law? The Division did not act as the employer for political subdivisions. Why did the Legislature make the same change in both statutes, and more importantly, why did it intend by one sentence *clearly and unambiguously* to waive immunity, and yet not waive immunity by the almost identical words in the other statute? The Court's postulated explanation simply will not hold.

Third, the Court says that if the sentence defining "employer" in the State Applications Act does not waive immunity then it has no purpose at all.[16] But the very same argument was made in *Barfield* about the same sentence in the Political

12. Act of December 12, 1989, 71st Leg., 2d C.S., ch. 1, §§ 15.44 & 15.47, 1989 Tex. Gen. Laws 1, 111–113.

13. Act of May 12, 1993, 73rd Leg., R.S., ch. 269, 1993 Tex. Gen. Laws 987, 1236–1240, 1249–1252.

14. *Ante* at 8.

15. *Ante* at 7-8.

16. *Ante* at 8.

Subdivisions Law, and the Court expressly rejected it.

This is the very sort of putative purpose argument we rejected in *Duhart v. State*, 610 S.W.2d 740 (Tex.1980). There we construed a statute providing compensation benefits to state highway department employees, which "adopted" a provision of the Workers' Compensation Law preserving a cause of action for exemplary damages for the death of an employee caused by the employer's gross negligence or by his intentional act or omission. We held that this adoption of a provision of one statute into another did not clearly and unambiguously waive the State's immunity from liability for the alleged wrongful death of one of its employees. We reasoned that the exemplary damages provision did not create a cause of action in any event, but only preserved any existing action from preclusion by the Workers' Compensation Law. As for why the Legislature would have "adopted" the exemplary damages provision in a statute which has as its sole purpose the authorization of compensation claims against the State if it did not also intend to allow such an action against the State, we could only surmise that "[i]t may be that a future Legislature will waive the governmental immunity of the State for exemplary damages." Whatever the reason may have been, the adoption of the exemplary damages provision was not a clear and unambiguous waiver of immunity.

*Duhart* is sufficiently analogous to the present cases as to require the same conclusion.[17]

We were not able to suggest a better purpose for the statute in *Barfield* or *Duhart* than we are here, but in those cases we nevertheless concluded that our inability to do so could not be translated into a clear and unambiguous legislative intent to waive governmental immunity. The Court cannot reach the opposite conclusion today without at the very least disavowing a part of the reasoning of *Barfield* and *Duhart*, though it refuses to do so.

The Court asserts that the State Applications Act "unambiguously states that agencies are covered 'persons' under the Anti–Retaliation Law",[18] but this is simply not true. The State Applications Act does not mention the word "person", which has always been the operative word in the Anti–Retaliation Law, just as the Political Subdivisions Law does not mention "person". Both define "employer", which does not appear in the Anti–Retaliation Law. I grant that it is perfectly reasonable to argue that a "person" in the Anti–Retaliation Law must be an employer because he is discriminating against employees, and therefore both the State Applications Act and the Political Subdivisions Law suggests that political subdivisions and state agencies should be subject to anti-retaliation lawsuits. But we squarely held in *Barfield* that this suggestion was not enough for a clear and unambiguous waiver of immunity, and we must either reach the same conclusion in this case or disavow *Barfield*.

We did conclude in *Barfield* that the Legislature had waived immunity for anti-retaliation actions in the Political Subdivisions Law, but we did so based on a provision that the State Applications Act does not have. Section 504.003 requires that a person elect between his remedies provided by the Anti–Retaliation Law and the Whistleblower Act. The latter statute expressly waives immunity, and if the former did not, there would be nothing to elect. An election between an action that is barred and one that is not is a Hobson's choice—no election at all. Thus, we concluded, the Legislature could not have acted rationally in requiring this election of remedies unless it intended that immunity was waived for both. This was the crux of our decision, as every court of appeals to

---

17.  *Barfield,* 898 S.W.2d at 295–296.

18.  *Ante* at 8.

construe the State Applications Act has recognized.[19] No provision of the State Applications Act presents the same quandary.

This Court's requirement that a waiver of immunity be clear and unambiguous is not hard to meet. The Legislature routinely uses language that leaves no doubt about its intent to waive immunity.[20] Absent such unmistakable clarity, we have found a waiver only when a statutory provision that admits of no other rational construction—such as the Texas Uniform Declaratory Judgments Act, which mandates that governmental entities be joined in some cases [21] and authorizes an award of attorney fees,[22] and the Political Subdivisions Law in *Barfield.* But at this point we have drawn the line, until now, insisting that the Legislature make certain its intent in waiving immunity.

Today the Court lowers the bar, holding that the Legislature can waive governmental immunity if its intent to do so seems reasonable. Whatever merits this holding may have as a rule of law do not include fidelity to language and precedent. "Reasonable" is simply not the equivalent of "clear and unambiguous", not by any stretch of language. And no case we have ever decided, certainly not *Barfield,* reach-es so far to find a waiver of immunity as today's decision. The Court has the prerogative to reduce the standard for determining waiver of governmental immunity that it has previously set, but it has no right to tax words with meanings they cannot bear. The Legislature may have decided, reasonably, plausibly, and even probably, that the State should be liable for retaliating against an employee who seeks workers' compensation benefits just as a private person would be, but it has not said so with the clear and unambiguous language it has often used in many other contexts, and that until now we have required. As long as that is really to be the standard for waiver of immunity, judges' ideas about reasonableness and policy cannot meet it.

I respectfully dissent.

**19.** *Honhorst v. University of N. Texas,* 983 S.W.2d 872, 874–875 (Tex.App.—Fort Worth 1998, no pet.); *Southwest Texas State Univ. v. Enriquez,* 971 S.W.2d 684, 686–687 (Tex. App.—Austin 1998, pet. denied); *Carrillo v. Texas Tech Univ. Health Sciences Ctr.,* 960 S.W.2d 870, 872 (Tex.App.—El Paso 1997, pet. denied); *Texas Dept. of Health v. Ruiz,* 960 S.W.2d 714, 716–719 (Tex.App.—El Paso 1997, pet. denied).

**20.** *E.g.,* Tex. Civ. Prac. & Rem.Code § 63.007(b) ("The state's sovereign immunity to suit is waived...."); § 81.010 ("Governmental immunity to suit is waived and abolished...."); § 101.021 ("A governmental unit in the state is liable for...."); § 101.025 ("Sovereign immunity to suit is waived ...."); § 103.002(a) ("... the state's immunity from the suit is waived."); § 110.008(a) ("... sovereign immunity to suit and from liability is waived and abolished...."); Tex. Educ.Code § 51.901(b) ("The defense of sovereign immu-nity shall not be available...."); Tex. Gov't Code § 554.0035 ("Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter ...."); § 2007.004(a) ("Sovereign immunity to suit and liability is waived and abolished to the extent of liability created by this chapter."); § 2007.024(a) ("Sovereign immunity to suit and liability is waived and abolished to the extent of liability created by this chapter."); Tex. Nat. Res.Code § 52.035(c) ("The state waives its right to claim sovereign immunity in any action...."); Tex. Prop.Code § 74.506(c) ("The state's immunity from suit without consent is abolished with respect to suits brought under this section.").

**21.** Tex. Civ. Prac. & Rem.Code §§ 37.004(a), 37.006(a)-(b).

**22.** *Id.* § 37.009; *Texas Educ. Agency v. Leeper,* 893 S.W.2d 432, 445–446 (Tex.1994).