TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00007-CV






State of Texas, Appellant


v.


Barbara Oakley, as Guardian of the Estate and Person of 

Richard Danziger, A Disabled Adult, Appellee







FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY

NO. 75107C, HONORABLE GUY HERMAN, JUDGE PRESIDING





D I S S E N T I N G O P I N I O N



 Because I disagree with the majority's determination that Ochoa's wrongful
imprisonment claim can be assigned to Danziger, I respectfully dissent.

 In this case, we must start with the premise that Texas cannot "be sued in her own
courts without her consent, and then only in the manner indicated by that consent." Hosner v. De
Young, 1 Tex. 764, 769 (1847), quoted in Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694
(Tex. 2003). The State may relinquish its sovereign immunity, if at all, in "varying degrees," and
the legislature "is better suited to balance the conflicting policy issues associated with waiving
immunity." Wichita Falls, 106 S.W.3d at 695. I believe that the question of whether assignment
is a necessary extension of the right created by this statute involves policy considerations better left
for the legislature. Further, because the legislature may waive immunity in "varying degrees," the
legislature's waiver of immunity as to "the person entitled" to relief after wrongful imprisonment
does not necessarily mean that the legislature also intended to waive immunity as to someone
purportedly holding an assignment of that right. (1)

 The State is immune both from suit and from liability, and even if the State
"acknowledges liability on a claim," it does not necessarily follow that the State waived immunity
from suit. Id. at 696. In evaluating whether immunity has been waived, we consider several factors. 
Id. at 697. First, waiver must be "beyond doubt." Id. Second, we resolve ambiguities in favor of
immunity, and if the statute leaves room for doubt, we "are less likely to find a waiver." Id. Third,
we must consider whether the legislature provided by statute for an "objective limitation on the
State's potential liability." Id. at 698. 

 Even if immunity from suit is waived, it is important to remember that the rule
requiring a clear and unambiguous waiver applies both to the existence and to the extent of the
waiver. (2) City of LaPorte v. Barfield, 898 S.W.2d 288, 297 (Tex. 1995); see Wichita Falls, 106
S.W.3d at 696. However, "[t]he clear and unambiguous requirement is not an end in itself, but
merely a method to guarantee that courts adhere to legislative intent. Therefore, the doctrine should
not be applied mechanically to defeat the true purpose of the law." Kerrville State Hosp. v.
Fernandez, 28 S.W.3d 1, 3 (Tex. 2000). In other words, we cannot apply the "clear and
unambiguous rule" so rigidly as to defeat the "almost certain intent" of the legislature. Id. (quoting
Barfield, 898 S.W.2d at 292). We may not interpret statutory language so as to render it pointless
if it is reasonably susceptible of another construction, and if there is no reasonable doubt of a
statute's purpose, "we will not require perfect clarity, even in determining whether governmental
immunity has been waived." Barfield, 898 S.W.2d at 292.

 In Wichita Falls, the statutes in question seemingly added up to the State being
amenable to suit. (3) See 106 S.W.3d at 698-99. However, the statute did not "contain the sort of
explicit language the Legislature generally uses to confirm its intent to waive sovereign immunity,"
and therefore the supreme court examined the statute to decide whether "the incorporated definition
is the functional equivalent of an explicit" legislative waiver. Id. at 699. The court observed that
the statute creates a "meaningful cause of action against private" facilities that "remains viable even
if suit against the government is barred" and that the statute's purpose is accomplished without
allowing suits against the State. Id. at 700. Therefore, the court determined that the statute "does
not waive the State's immunity beyond doubt" and that "[t]he statute's ambiguity precludes our
finding an unmistakable Legislative intent to waive sovereign immunity." Id. at 700-01.

 In this case, section 103.001 of the civil practice and remedies code provides that a
person is entitled to compensation for wrongful imprisonment if "the person has served in whole or
in part a sentence in prison" and has either received a full pardon or been granted relief on the basis
of actual innocence. Tex. Civ. Prac. & Rem. Code. Ann. § 103.001(a) (West 2005). A "person
seeking compensation under" chapter 103 must initiate proceedings to obtain relief no later "than
the third anniversary of the date the person received the pardon or was found not guilty." Id.
§ 103.003 (West 2005). Subchapter C governs the seeking of compensation through suit against the
State, and its provisions require a claimant to file "a verified petition alleging that the petitioner is
entitled to compensation." Id. § 103.101(b) (West 2005). A "petitioner must establish by a
preponderance of the evidence that the petitioner is entitled to compensation," id. § 103.102 (West
2005), and if the fact-finder determines that the petitioner is entitled to relief, the petitioner may
recover expenses "incurred by the petitioner" related to the criminal proceedings, income lost as a
direct result of the wrongful imprisonment, and medical and counseling expenses "incurred by the
petitioner." Id. § 103.105(a) (West 2005). In determining the proper amount of compensation, the
fact-finder may not deduct any expenses incurred by the State "in connection with the arrest,
prosecution, conviction, and wrongful imprisonment of the petitioner." Id. § 103.105(b). Payments
terminate if the eligible person is later convicted of a felony or "on the date of the person's death";
compensation payments do not flow to the person's heirs or estate. Id. § 103.154 (West 2005).

 I set out the applicable statutory provisions to highlight the fact that each statute is
couched exclusively in terms of the wrongfully convicted person. There is no mention of
assignment, nor is this statute one that is rendered meaningless without a finding of waiver as to an
assignee. See Wichita Falls, 106 S.W.3d at 698, 700; Fernandez, 28 S.W.3d at 3. I agree with the
majority that the legislature has shown a clear and unmistakable intent to waive immunity for a
person who has wrongfully "served in whole or in part a sentence in prison." Tex. Civ. Prac. &
Rem. Code Ann. § 103.001(a). However, the legislature has not shown a clear intent to allow that
right of action and corollary waiver of immunity to be transferred to another person. (4) Compensation
under chapter 103 may be had only upon application or petition by the convicted person and,
although this chapter contains a clear waiver of immunity from suit when an entitled person files a
verified petition, it only allows for recovery by the injured person. The claimant must aver that he
or she was entitled to compensation, and there is no indication of any intent to allow others to seek
compensation for the imprisoned person's damages. More important, compensation ceases upon the
claimant's death and does not survive to pass to his or her heirs. This clearly demonstrates that the
legislature intended claims made under this chapter to be personal in nature and limited to the
wrongfully imprisoned person. To widen the legislature's waiver of immunity and graft more liberal
common-law principles onto these statutes flies in the face of established sovereign immunity law. 

 Furthermore, I believe the majority impermissibly melds the definition of a "personal"
claim with the question of whether available damages are remedial or punitive, two aspects of a
claim that I believe are separate inquiries. I recognize that the compensation allowed under chapter
103 is remedial in nature and that punitive damages are not allowed. However, that does not change
the fact that the injury being addressed could hardly be more personal in nature or that every
provision of chapter 103 is expressly limited to the wrongfully imprisoned person him or herself. 
Although the general rule does allow for the assignment of most claims, as stated in Bay Ridge
Utility District v. 4M Laundry, "in the absence of an express statutory provision to the contrary, a
statutory cause of action is not assignable if it is personal to the one who holds it and would not
survive his death." 717 S.W.2d 92, 96 (Tex. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.)
(citing Dearborn Stove Co. v. Caples, 236 S.W.2d 486, 490 (Tex. 1951)). 

 The express language of chapter 103 shows a legislative intention that claims under
chapter 103 be considered personal claims, albeit personal claims with relief limited to remedial
compensation. Because chapter 103 claims are personal in nature and do not survive the claimant's
death, under Bay Ridge and Dearborn Stove, I would hold that chapter 103 claims are not assignable
and may only be filed by the wrongfully imprisoned person him or herself.

 I believe that the majority's allowance of the assignment impermissibly broadens the
waiver of immunity beyond the legislature's intentions. Further, I would hold that Ochoa's claim
under chapter 103 is a personal claim and, because it cannot survive his death, I would hold that it
may not be assigned to another party. For these reasons, I respectfully dissent.



 __________________________________________

 David Puryear, Justice

Before Justices B. A. Smith, Patterson and Puryear

Filed: December 16, 2005
1. The majority cites several cases for the proposition that in the face of statutory silence, we
should look to common-law principles governing assignment. See PPG Indus., Inc. v. JMB/Houston
Ctrs, Partners Ltd. P'ship, 146 S.W.3d 79, 87 (Tex. 2004); Mobil Oil Corp. v. Ellender, 968 S.W.2d
917, 927 (Tex. 1998); Jackson v. Thweatt, 883 S.W.2d 171, 175 (Tex. 1994). None of those cases,
however, deals with sovereign immunity.
2. The legislature ratified this concept when it enacted section 311.034 of the Code
Construction Act, providing that there is no waiver unless "effected by clear and unambiguous
language." Tex. Gov't Code Ann. § 311.034 (West Supp. 2005). 
3. The plaintiff sued a state hospital, part of the Texas Department of Mental Health and
Mental Retardation ("MHMR"), for violations of the patient's bill of rights. Wichita Falls State
Hosp. v. Taylor, 106 S.W.3d 692, 694 (Tex. 2003); see Tex. Health & Safety Code Ann. 321.002,
.003 (West 2001) (persons harmed by violation of patient's bill of rights may sue for damages). 
Although the bill of rights does not expressly define "mental health facilities," it uses "the meaning
assigned by Section 571.003." Tex. Health & Safety Code Ann. § 321.001(4) (West 2001). "Mental
health facility" is defined by section 571.003 to include facilities operated by MHMR. Id.
§ 571.003(12) (West Supp. 2005).
4. In its discussion of Wichita Falls and the waiver of immunity made the subject of that case,
the majority fails to draw this distinction between waiver as to the wronged person and an assignee.