123 N.J. Super. 255 (1973)
302 A.2d 184
FREEDOM FINANCE CO., INC., PLAINTIFF,
v.
NEW JERSEY BELL TELEPHONE CO. ET AL., DEFENDANT.
Superior Court of New Jersey, District Court Essex County.
Decided January 19, 1973.
*256 Mr. John S. Giava, Esq., attorney for plaintiff.
Mr. Chauncey L. Barrett, attorney for defendant.
Mr. Bertram P. Goltz, Jr., Deputy Attorney General, for the Attorney General.
YANOFF, J.C.C., Temporarily Assigned.
The issue here is whether N.J.S.A. 2A:150A-1, which became effective in 1971, may constitutionally be applied retroactively. The statute reads:
It shall be unlawful for any person to withhold or pay to another or purchase or have assigned to him, other than by order of court, any salary, wages, commissions, pay or other compensation for services, or any part thereof, due or to be become due to any employee and any such purchase or assignment, whenever executed, shall be void and unenforcible.
The dispute revolves around the words "whenever executed."
The factual context is simple. On or about October 12, 1966, plaintiff obtained in New York State a wage assignment from Helen Ruth Keys, also known as Helen Ruth Brown, in connection with a loan of money. Borrower defaulted, as a result of which plaintiff claims to be entitled *257 to exercise its rights under the wage assignment. Defendant employer, New Jersey Bell Telephone Company, refused to pay on the ground that payment was prohibited by N.J.S.A. 2A:150A-1. Plaintiff instituted suit against Bell, and asserted that the statute in question was unconstitutional. The Attorney General was brought in pursuant to the rules.
The burden of argument on a summary judgment motion has been borne by the Attorney General. Plaintiff contends that
1. The contract, having been executed in New York, is valid under New York law.
2. If New Jersey law is applied, U.S. Const. Art. I, § 10, and N.J. Const. (1947), Art. IV, § VII, para. 3, prohibit retroactive effect because plaintiff would thereby be deprived of a remedy for enforcing the contract which existed when made.
At oral argument plaintiff conceded that the State had the right to change statutory remedies affecting the enforcement of the contract. The gravamen of plaintiff's complaint is that the State may not impair a remedy upon which the parties had agreed by contract.
The language of the statute, its history, and other statutes relating to the same subject matter make it clear that the Legislature intended it to have retroactive effect. It must stand or fall on that basis.
The statute must be classified as among the enactments which protect the minimum living standards of the people of this State. Other statutes of similar tenor are minimum wage laws (N.J.S.A. 34:11-1, affecting public contracts; N.J.S.A. 34:11-34 et seq., fixing minimum wage standards); statutes exempting assets from assignment or levy (N.J.S.A. 2A:19-12, 2A:26-4, 2A:17-24, 34:15-29); a statute controlling the order of income executions (N.J.S.A. 2A:17-52); a statute specifically exempting a minimum amount of wages from levy (N.J.S.A. 2A:17-50); and laws directing prompt payment of wages and the *258 methods of paying wages (N.J.S.A. 34:11-4.2, 4.3, 4.4, 4.5). Such statutes manifest the State's concern with the welfare of its citizens and are unquestionably within the Constitutional power.
In light of the foregoing there is no doubt in my mind that the transaction in so far as the enforcement of the wage assignment is concerned, is governed by New Jersey law. While it may be true that a contract is normally controlled with respect to its enforcement by the law of the place where made, the problem in this case is the impact which the enforcement of the contract may have upon the subsistence level of New Jersey residents. Viewed in that light, Oxford Consumer Discount Co. v. Stefanelli, 102 N.J. Super. 549 (App. Div. 1968), 104 N.J. Super. 512 (App. Div. 1969), mod. 55 N.J. 489 (1970), is determinative. There, the question was whether the New Jersey Secondary Mortgage Loan Act (N.J.S.A. 17:11 A-1 et seq.) controlled the enforcement of a contract made in Pennsylvania; the court held that it did. Judge Conford, speaking for the court (102 N.J. Super. 549) analyzed the impact of the equal protection, due process, commerce, and full faith and credit provisions of the United States Constitution upon the transactions and concluded that they did not bar application of the New Jersey statute. The ruling rested ultimately upon the power of the State to protect its citizens from oppressive financing transactions wherever made. Judge Conford stated:
In the instant case, giving this transaction the protective umbrella of the Pennsylvania statute would not only offend New Jersey policy in a most sensitive area, but would negate a New Jersey statute embodying that policy in terms read above by this court to control the very transaction involved * * *
The Pennsylvania statute does not have a claim for recognition to validate this transaction superior to that of the New Jersey statute for subjection of the transaction to its requirements.
The freedom of plaintiff ordinarily to contract how and with whom it will does not rationally outweigh the decree of the New Jersey Legislature, born of the baneful background circumstances related above, that whoever, wheresoever resident, would lend to residents *259 of New Jersey on the security of a secondary mortgage on property in that State must comply with the regulatory requisites it has laid down at peril of losing its right of recovery on such a loan in New Jersey Courts. [at 575-576]
The Supreme Court's modification (55 N.J. 489) did not affect this conclusion.
HIMC Investment Co. v. Siciliano, 103 N.J. Super. 27 (Law Div. 1968), is to the same effect.
The strength of the public policy involved is attested not merely by the statutes already cited, which demonstrate a strong state interest in reserving to its residents, particularly wage earners, a minimum subsistence, not reached by process of any nature, but by the history of N.J.S.A. 2A:150A-1 itself. New Jersey has considered wage assignments an area appropriate for regulation since at least 1884. L. 1884, c. 166 (N.J.S.A. 34:11-25) made wage assignments unlawful when secured by usurious loans. L. 1896, c. 179, § 2, invalidated wage assignments which relieved the employer from the obligation to pay weekly. L. 1948, c. 71, § 5, regulated wage assignments to some degree, providing for allocation to interest and charges in a wage assignment, of the excess over the amount loaned. L. 1967, c. 94 (N.J.S.A. 17:10-17) amended this statute to invalidate assignments "hereafter made." After the Appellate Division, in an unreported decision cited by plaintiff, had held that the statute did not prevent enforcement of an assignment made six weeks prior to its effective date, the Legislature enacted, N.J.S.A. 2A:150A-1. The legislative statement accompanying the statute reflected the public policy which the Legislature deemed served by the statute:
An employee with a good defense to a wage assignment is in no position to defend because there is no court process whatever and the employer withholds the moneys to avoid personal liability. The result is inequitable economic duress on the employee. Wage assignments today serve no legitimate economic or social interest and should be abolished. This bill is one more step in the effort to protect the consumer public.
*260 Obviously, the Legislature had in mind the difference between a wage assignment and a wage execution under N.J.S.A. 2A:17-50, where a debtor is given notice pursuant to court rule, and the order is made by a judge who has the opportunity to weigh the economic impact of the wage deduction upon the debtor's basic living requirements.
Trial courts should not declare a statute unconstitutional unless the violation is clear. Legg v. Passaic County, 122 N.J.L. 100 (Sup. Ct. 1939), aff'd 123 N.J.L. 263 (E. & A. 1939); State v. Packard-Bamberger & Co., Inc., 123 N.J.L. 180 (Sup. Ct. 1939); State v. Cannarozzi, 77 N.J. Super. 236 (App. Div. 1962).
U.S. Const., Art. I, § 10, forbids a State to "pass any * * * Law impairing the Obligation of Contracts * * *". N.J. Const. (1947), Art. IV, § VII; par. 3 provides, "The Legislature shall not pass any * * * law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made."
A review of the cases demonstrates that neither the United States nor the New Jersey courts have considered these provisions as absolutes; rather, they have determined the question of whether there has been an impairment of obligation or deprivation of remedy by balancing the extent to which a contract party is deprived of the benefit of his contract against the social interests involved. Naturally, such a weighing of interests involve questions of judgment which may vary from time to time. At one end of the resulting range of decisions are cases such as emerged in the 1930's as the result of economic depression. Thus in Home B. & L. Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934), a two-year moratorium on mortgage foreclosures was sustained, and in Veix v. Sixth Ward B. & L. Ass'n of Newark, 123 N.J.L. 356 (E. & A. 1939), aff'd 310 U.S. 32, 60 S.Ct. 792, 84 L.Ed. 1061 (1940), a statute which delayed substantially the time of withdrawal of shares in building and loans was held constitutional, on the *261 theory that a shareholder in a building and loan was subject to statutory modifications of his right to withdrawal.
In Veix v. Seneca B. & L. Assn, 126 N.J.L. 314 (E. & A. 1941), the shareholder had given notice of withdrawal prior to enactment of the statutes delaying payment. He claimed as does plaintiff here, impairment of contract obligations, and invoked the same constitutional provisions as those upon which plaintiff relies. The Court of Errors & Appeals nevertheless adhered to its previous ruling. Justice Perskie, for the court, stated appropriately:
From all that has been written, it becomes increasingly clear that we have steadfastly adhered to the well recognized rule of law determinative of the constitutional exercise of the reserved police power of the state over property and contract rights. That rule of law is that every contract is made subject to the implied condition that is fulfillment may be frustrated by a proper exercise of the police power. But such a result can only be effected if the exercise of the power is for an end which is in fact public and the means adopted is reasonably adapted at that end. [at 320]
The same principle is exemplified by a number of cases where, at least in my view, pressures of social necessity for modification of the contract, were not as great as in the Blaisdell situation. Stone v. Mississippi, 101 U.S. 814, 25 L.Ed. 1079 (1879); Louisiana v. New Orleans, 102 U.S. 203, 26 L.Ed. 132 (1880); Manigault v. Springs, 199 U.S. 473, 26 S.Ct. 127, 50 L.Ed. 274 (1905); Marcus Brown Holding Co. v. Feldman, 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877 (1921); Lincoln Fed. L.U. v. Northwestern I. & M. Co., 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212 (1948).
At the other end of the range of cases are those which hold that statutes which affect only procedural matters are ordinarily given retrospective operation. Howard Savings Institution v. Kielb, 38 N.J. 186 (1962); Pennsylvania Greyhound Lines v. Rosenthal, 14 N.J. 372 (1954); Morin v. Becker, 6 N.J. 457 (1951); Lapp v. Belvedere, 116 N.J.L. 563 (E. & A. 1936); Avon Sheet Metal Co. v. Heritage House *262 Associates, 107 N.J. Super. 487 (Cty. D. Ct. 1969). But to say that the questioned statute affects only procedure and remedy is not a complete answer, since sufficiently drastic changes in those areas may drain a contract of its substance. The question still remains whether a plaintiff has in reality been deprived by this statute of the value of its contract. City of El Paso v. Simmons, 379 U.S. 497, 515, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965); W.B. Worthen Co. v. Kavanaugh, 295 U.S. 56, 62, 55 S.Ct. 555, 79 L.Ed. 1298 (1935).
But on these issues plaintiff's attack on N.J.S.A. 2A:150A-1 fails since the change effected by it is essentially procedural and does not deprive plaintiff of a whit of the substance of its contract. It requires only that plaintiff submit its claim to a court before it can collect from a person's wages. Its impact upon plaintiff's rights is of the same nature as the amendment by L. 1969, c. 92, § 1 of N.J.S.A. 2A:17-50, which increased the amount of wages exempted from execution from $18 to $48, the constitutionality of which has not been questioned, and probably less onerous. Plaintiff's argument that there is a distinction between a statutory remedy and a remedy created by contract could deprive the State of all power, if carried to its logical consideration. It would mean that a State is required to enforce a contract, no matter how repugnant to its public policy. Clearly, this is not so. In this case we are dealing, not with an insignificant aspect of public policy, but with a strongly enunciated and long held policy protecting the basic living standards of the State. It would be strange indeed if the State could not require a creditor to suffer the very minor deprivation involved here to effectuate that policy.
The Attorney General's motion for summary judgment will therefore be granted.