Michael **RICHARDS**, Appellant,

v.

**TEXAS A & M UNIVERSITY SYSTEM and Texas A & M University, Appellees.**

No. 10–01–183–CV.

Court of Appeals of Texas, Waco.

Feb. 11, 2004.

Rehearing Overruled March 10, 2004.

Gaines F. West, II and Lanny D. Ray, West, Webb, Allbriton, Gentry & Rife, P.C., College Station, for Appellant/Relator.

Nelly R. Herrera, Chief, Tort Litigation Division, Shannon L. Simmons, Asst. Attorney Gen.–Tort Litigation Div., Austin, for Appellee/Respondent.

Before Chief Justice TOM GRAY, Justice BILL VANCE, and Justice REYNA.*

---

* This case was submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. Justice Reyna, who took the oath of office on January 5, 2004, participated in the decision of the Court.

## OPINION

TOM GRAY, Chief Justice.

This is an appeal of an order dismissing a suit for want of jurisdiction. We state the facts largely as they appear in the pleadings of Michael Richards, appellant here and plaintiff in the trial court. For several years, Richards was employed as a maintenance worker by Texas A & M University System and Texas A & M University (collectively "TAMU"), appellees here and defendants in the trial court. While so employed, Richards suffered injuries to his back and other injuries. After Richards filed a workers' compensation claim, TAMU terminated Richards's employment. Alleging that TAMU had terminated him in retaliation for his workers' compensation claim, Richards brought suit against TAMU under the "Anti–Retaliation Law." *See* TEX. LAB.CODE ANN. chap. 451 (Vernon 1996). TAMU moved for dismissal, on the ground that they are immune from suit under the doctrine of sovereign immunity. The trial court granted the motion and ordered the suit dismissed. Richards appeals. Richards presents an equal-protection challenge to the constitutionality of the Texas Workers' Compensation Act's waiver of governmental immunity for employees of some state educational institutions, but not for employees of other state institutions, agencies, and political subdivisions. *See id.* tit. 5 (Vernon 1996 & Supp.2004). This Opinion thus involves issues of constitutional law. *See* TEX. R.APP. P. 47.4(b). We will affirm.

## PRESERVATION

In the first place, TAMU contends that Richards did not preserve his constitutional complaint for appellate review. TAMU argues Richards did not timely, affirmatively plead a constitutional claim in his petition and pray for injunctive relief. Richards was not required to seek injunctive relief in order to raise equal protection as a defense to TAMU's motion to dismiss, and need not have raised it until TAMU filed their motion.

Richards filed his original petition and his amended petition in 1998. In their answer, TAMU raised sovereign immunity as an affirmative defense to suit and to liability.

In 1999 and again in 2000, the trial court gave the parties notice of its intent to dismiss the suit for want of prosecution. Each time, Richards moved to retain the case on the court's docket, on the ground that the Texas Supreme Court's then-pending decision in *Kerrville State Hospital v. Fernandez* would settle the question of whether the State had waived sovereign immunity for suits by state employees under the Anti–Retaliation Law. *See Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1 (Tex.2000). Each time, the court ordered the case retained.

In July, 2000, the Supreme Court decided *Kerrville State Hospital. Id.* The Court held that the predecessor of Labor Code Section 501.002 waived sovereign immunity for anti-retaliation actions against state agencies covered by that law. *See id.* at 4–8.

In September, 2000, TAMU filed their motion to dismiss for want of jurisdiction. The motion contended that the State had not waived sovereign immunity for suits by TAMU employees under the Anti–Retaliation Law, that TAMU were thus immune from Richards's suit, and that accordingly the trial court lacked subject-matter jurisdiction.

In February, 2001, Richards filed a response, loosely framing an equal-protection argument. The next month, Richards filed a supplemental response, in which he expressly presents arguments under the

equal-protection clauses of the United States and Texas Constitutions.

In May, 2001, the trial court granted TAMU's motion to dismiss. The court noted:

> This Court cannot comprehend why the Legislature would see fit to provide anti-retaliation coverage for certain state employees (including educational employees of the Texas [T]ech system) while denying that same coverage to those employees of the A & M and UT systems. There is no logical basis for the distinction.

Nonetheless, the court expressly overruled Richards's equal-protection argument.

The next day, Richards filed a motion for reconsideration of the court's order, again urging that the Workers' Compensation Act irrationally and therefore unconstitutionally discriminated against employees of TAMU.

■ It is true, as TAMU argue, that Texas common law does not recognize a cause of action in tort for money damages for a violation of the Texas Constitution. *See City of Beaumont v. Bouillion,* 896 S.W.2d 143, 150 (Tex.1995). Richards, however, manifestly seeks damages under the Anti–Retaliation Law, a statutory cause of action, and not under the Texas Constitution.

■ Richards's constitutional argument, too, is timely. The Texas Rules of Appellate Procedure require a "timely" complaint in the trial court in order to preserve the complaint for appeal. TEX.R.APP. P. 33.1(a). In order to be timely, a complaint must be raised at a time when the trial court has the power and opportunity to correct the error alleged. *Wal–Mart Stores, Inc. v. McKenzie,* 997 S.W.2d 278, 280 (Tex.1999). An objection is timely if made "as soon as the ground of objection becomes apparent." *Kerr-McGee Corp. v.*

*Helton,* 134 S.W.3d 204, No. 07–01–0263–CV, 2002 WL 110433, 2002 Tex.App. LEXIS 566, at *8 (Tex.App.-Amarillo Jan.28, 2002), *rev'd on other grounds,* 133 S.W.3d 245, 47 Tex. Sup.Ct. J. 248, 2004 WL 224458, 2004 Tex. LEXIS 63 (Tex. Jan. 30, 2004); *accord Aguilar v. State,* 26 S.W.3d 901, 905–906 (Tex.Crim.App.2000). Richards need not have raised equal protection as a defense to TAMU's assertion of sovereign immunity before TAMU filed their motion to dismiss asserting immunity from suit. After TAMU filed their motion to dismiss, and before the court ruled on the motion, Richards filed responses raising the denial-of-equal-protection complaint. After the trial court granted TAMU's motion, Richards filed a motion for reconsideration, again arguing equal protection. Richards thus timely and specifically presented his equal-protection complaint to the trial court. This issue is adequately preserved.

## LEGAL BACKGROUND

### Sovereign Immunity

■ The doctrine of sovereign immunity, of course, predates the United States Constitution. *See Alden v. Maine,* 527 U.S. 706, 711–30, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). As a matter of natural law or the law of nations, "[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent.*" *Id.* at 716, 119 S.Ct. 2240 (quoting THE FEDERALIST No. 81 (Alexander Hamilton)) (emphasis in THE FEDERALIST). A "sovereign[ ] is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Hercules, Inc. v. United States,* 516 U.S. 417, 422, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996). The states are sovereigns for purposes of sovereign immunity. *Fed. Mar. Comm'n v. S.C. State Ports*

*Auth.,* 535 U.S. 743, 751–53, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002). As the Texas Supreme Court has put it, "no State can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 (Tex.2003) (quoting *Hosner v. De Young,* 1 Tex. 764, 769 (1847)).

■■■ "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities." *Fed. Mar. Comm'n,* 535 U.S. at 760, 122 S.Ct. 1864. "[M]ore concretely," however, state sovereign immunity protects against "raids on state treasuries." *Alden,* 527 U.S. at 720, 119 S.Ct. 2240.

■■■ In Texas, sovereign immunity, unless waived, includes immunity from suit and immunity from liability. *Wichita Falls State Hosp.,* 106 S.W.3d at 696. In the absence of waiver of immunity from suit, a trial court lacks subject-matter jurisdiction in a suit against the State. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999).

**Equal Protection**

Richards argues for relief under the equal-protection provisions of the United States and Texas Constitutions.

■■ The Equal Protection Clause of the United States Constitution provides:

No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1. "[T]he Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike[.]' " *Nguyen v. Immigration & Naturalization Serv.,* 533 U.S. 53, 63, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001) (quoting *City of Cleburne v.*

*Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

The Bill of Rights of the Texas Constitution provides for equal protection in the following terms:

All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.

TEX. CONST. art. I, § 3.

Texas courts have generally assumed that an equal-protection analysis can be applied to the issue of the waiver of sovereign immunity. *E.g., Tex. Dep't of Health v. Rocha,* 102 S.W.3d 348, 355 (Tex.App.-Corpus Christi 2003, no pet.) (TEX. CONST.); *Gulf Electroquip, Inc. v. Univ. of Tex. at Austin,* No. 14–00–01149–CV, 2002 WL 480245, at *3–*4, 2002 Tex.App. LEXIS 2313, at *11–*12 (Tex.App.-Houston [14th Dist.] Mar. 28, 2002, pet. denied) (not designated for publication) (U.S. CONST.). The highest court of at least one state has held that the waiver of sovereign immunity cannot violate the Equal Protection Clause. *See Riddle v. Ashe,* 269 Ga. 65, 495 S.E.2d 287, 288–89 (1998). In that case, reasoning that since the Equal Protection Clause "protects only rights, not mere privileges," and since "[a] waiver of sovereign immunity is a mere privilege, not a right, and the extension of that privilege is solely a matter of legislative grace," the Court concluded that "discrimination in the grant of privileges is not a denial of equal protection to those who are not favored." *Id.* We assume without deciding that the waiver of sovereign immunity may be analyzed under equal-protection standards.

■■■ The equal-protection analysis under the federal Equal Protection Clause "applies to equal protection challenges under the Texas Constitution." *Bell v. Low*

*Income Women,* 95 S.W.3d 253, 266 (Tex. 2002).

 Under that analysis, social and economic legislation that does not discriminate against a protected class or implicate a fundamental right is evaluated on a rational-basis standard. *See Cent. State Univ. v. Am. Ass'n of Univ. Professors,* 526 U.S. 124, 127–28, 119 S.Ct. 1162, 143 L.Ed.2d 227 (1999) (per curiam). Such legislation includes workers' compensation legislation. *See Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 524 (Tex.1995). "Under rational-basis review, where a group possesses 'distinguishing characteristics relevant to interests the State has the authority to implement,' a State's decision to act on the basis of those differences does not give rise to a constitutional violation." *Bd. of Trustees v. Garrett,* 531 U.S. 356, 366–67, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (quoting *City of Cleburne,* 473 U.S. at 441, 105 S.Ct. 3249). "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 367, 105 S.Ct. 3249. That is, legislation survives an equal-protection challenge so long as the legislation is "rationally related to a legitimate state interest." *Pennell v. City of San Jose,* 485 U.S. 1, 14, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988). A state interest is legitimate so long as it does not "run afoul of some specific federal constitutional prohibition, or of some valid federal law." *See Lincoln Fed. Labor Union v. N.W. Iron & Metal Co.,* 335 U.S. 525, 536, 69 S.Ct. 251, 93 L.Ed. 212 (1949).

 Government employees are not a protected class for equal-protection purposes. *Mass. Bd. of Retirement v. Murgia,* 427 U.S. 307, 312–13, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

 As a matter of separation of powers, the judicial branch presumes that the actions of the legislative branch are constitutional. *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988). The legislative record need not show the legislature's reasons. *Garrett,* 531 U.S. at 367, 121 S.Ct. 955. Rather, the party challenging the constitutionality of legislation has the burden "to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* (quoting *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)) (internal quotation omitted). The rational basis conceived of by the reviewing court need not be the one that actually motivated the legislature. *See Fed. Communications Comm'n v. Beach Communications, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). For example, in *Williamson v. Lee Optical of Oklahoma, Inc.,* the United State Supreme Court hypothesized reasons for a statute that permitted ophthalmologists and optometrists, but not opticians, to fit or duplicate eyeglass lenses. *See Williamson v. Lee Optical of Okla., Inc.,* 348 U.S. 483, 485–86, 487, 490–91, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

## Texas Workers' Compensation Act

 The Workers' Compensation Act, of course, creates a comprehensive insurance system for workplace injuries to employees of subscribing employers. *See* TEX. LAB.CODE ANN. tit. 5. The Act's social and economic purposes include simplifying and rationalizing compensation to employees for workplace injuries, and limiting tort liability for employers. *See Payne v. Galen Hosp. Corp.,* 28 S.W.3d 15, 17 (Tex. 2000); *Garcia,* 893 S.W.2d at 510–16.

The Act generally provides for coverage for employees of the State of Texas and of Texas state agencies, that is, for persons "in the service of the state pursuant to an ... express oral or written contract of hire." TEX. LAB.CODE ANN. § 501.001(5)(A) (Vernon Supp.2004); see id. § 501.021 (Vernon 1996). Within this general provision for state employees, the Act expressly includes employees of Texas Tech University, of Texas Tech University Health Sciences Center, and of institutions under the boards of regents of those institutions. Id. § 501.022(a) (Vernon 1996). The Act also separately provides for coverage for employees of political subdivisions of the state. Id. § 504.011 (Vernon 1996).

From this general coverage of state employees, however, the Act excepts the employees of three state agencies, to the extent that those employees are covered by other sections of the Act: the University of Texas System, the Texas A & M University System, and the Texas Department of Transportation. TEX. LAB.CODE ANN. § 501.024(5)–(7) (Vernon Supp.2004). Other provisions of the Act specifically provide for coverage of employees of these agencies. See id. § 502.021(a) (Vernon 1996) (Tex. A & M Univ. Sys.); id. § 503.021(a) (Vernon 1996) (Univ. of Tex. Sys.); id. § 505.011 (Vernon 1996) (Tex. Dep't of Transp.).

In specifically providing for coverage for employees of these three agencies, those subchapters generally adopt definitional and other sections of the Act, modifying them as necessary, to the extent that the general sections are not inconsistent with the specific subchapters. TEX. LAB.CODE ANN. §§ 502.002, 503.002, 505.002 (Vernon 1996). The subchapters providing for coverage for state employees generally and those specifically providing for coverage of employees of political subdivisions and the Department of Transportation expressly adopt Chapter 451, the Anti–Retaliation Law. See id. §§ 501.002(a)(10), 504.002(a)(7) (Vernon Supp.2004); id. § 505.002(a)(10) (Vernon 1996). The subchapters providing for coverage for employees of the A & M System and the UT System do not adopt Chapter 451. Cf. id. §§ 502.002(a), 503.002(a).

**Anti–Retaliation Law**

Chapter 451 of the Texas Labor Code, commonly called the Anti–Retaliation Law, provides, "A person may not discharge or in any other manner discriminate against an employee because the employee has ... filed a workers' compensation claim in good faith" or otherwise participated in a workers' compensation claim or suit in specified ways. TEX. LAB. CODE ANN. § 451.001; see Kerrville State Hosp., 28 S.W.3d at 4 & n. 1. The purpose of the Law is "to protect persons entitled to benefits under the Workers' Compensation Act and to prevent them from being discharged for filing claims to collect such benefits." Trico Techs. Corp. v. Montiel, 949 S.W.2d 308, 312 (Tex.1997) (per curiam). The Law is thus a statutory exception to the common-law employment-at-will doctrine. Alayon v. Delta Air Lines, Inc., 59 S.W.3d 283, 287 (Tex.App.-Waco 2001, pet. denied).

The Anti–Retaliation Law expressly waives sovereign immunity from suit by employees of those agencies to which the Law applies. See Kerrville State Hosp., 28 S.W.3d at 9 (state employees under TEX. LAB.CODE chap. 501); City of LaPorte v. Barfield, 898 S.W.2d 288, 296 (Tex.1995) (employees of political subdivisions under TEX. LAB.CODE chap. 504).

**ANALYSIS**

Richards does not contend that the review of the Workers' Compensation Act is under any heightened scrutiny. Nor does Richards contest that the Legis-

lature did not intend to waive sovereign immunity for employees of the UT and A & M systems. The only contested matter is whether, in not waiving immunity for those employees, while waiving it for state employees generally, the Legislature denied Richards equal protection. It did not.

Richards argues that TAMU fail to state a rational basis for the distinction between the two educational institutions and other state agencies. Richards thus misstates the parties' burdens. The argument of TAMU, both at trial and on appeal, would have been more helpful had they developed specific reasons, grounded in the legislative history, for the Legislature's drawing the distinction that it did. Nonetheless, the burden to overcome the strong presumption in favor of the constitutionality of a statute, both at trial and on appeal, rests on the party challenging the statute. Thus, the burden remains on Richards to demonstrate that under no conceivable state of facts is the distinction rational.

█ Likewise, Richards puts great weight on the trial court's statement that there was no "logical" reason for the distinction between these two educational institutions and other state agencies. Trial court findings have little effect on the review of the constitutionality of a statute. *Garcia,* 893 S.W.2d at 519–20. Again, on appeal, as at trial, Richards bears the burden of establishing that no rational basis for the distinction exists. Since we can conceive of a rational basis, Richards fails to meet this burden.

█ We must hold a statute constitutional against an equal-protection challenge unless we can conceive of no rational basis for the distinction drawn by the statute. The Texas Supreme Court has upheld the Workers' Compensation Act against general equal-protection challenges. *Garcia,* 893 S.W.2d at 525, 531,

532, 533. The Eastland Court of Appeals, too, has held that the UT System's retention of sovereign immunity against anti-retaliation suits, under circumstances corresponding to the A & M System's, did not deny UT System employees equal protection. *See Clark v. Univ. of Tex. Health Science Ctr.,* 919 S.W.2d 185, 188 (Tex. App.-Eastland 1996, writ denied).

█ Only one rational basis for the difference in protection is needed. We have identified at least one possible rational basis for this distinction. The A & M and UT systems are the only state educational institutions for whose employees the State has not waived sovereign immunity from suit under the Anti–Retaliation Law. Those institutions also share the distinction of being the only state educational institutions that are authorized to meet their workers' compensation obligations by self-insurance. *See* TEX. LAB.CODE ANN. §§ 502.022, 503.022 (Vernon 1996). The distinction between insured and self-insuring entities can constitute a valid rational basis for a distinction between them. For example, the Supreme Court of Mississippi has held that a statute that waived sovereign immunity for municipalities that participated in an insurance plan, but did not waive it for municipalities that self-insured, did not deny equal protection. *Mosby v. Moore,* 95-CA-00672-SCT, ¶¶ 17–21 (Miss. 1998), 716 So.2d 551, 555–56.

The costs of workers' compensation insurance claims and suits can be high and unpredictable. A self-insuring entity, of course, does not enjoy the primary benefits of insurance, which are to limit the entity's exposure by distributing liability over many insureds. *Cf. Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 407 (Tex.1985). The Legislature may have believed that it was necessary to protect the A & M and UT systems from the additional risks and

burdens of potentially large anti-retaliation lawsuits. Although we have no reason to believe that those institutions discharge employees for filing workers' compensation claims or suits, the costs of defending against or settling employment suits, even suits that the defendant believes are groundless, can be substantial. Richards, for instance, pleaded for damages for lost income, lost earning capacity, past and future mental anguish, and loss of enjoyment of life, for punitive damages, and for attorney's fees. The A & M and UT systems' liability as workers' compensation self-insurers distinguishes them from other state educational institutions, for whose employees the State has waived sovereign immunity for anti-retaliation suits.

■■■ Richards argues that the conservation of the State's limited financial resources cannot be a rational basis for the decision not to waive sovereign immunity. To the contrary, "to protect the public treasury" is one of the prime reasons for modern sovereign immunity. *Wichita Falls State Hosp.*, 106 S.W.3d at 695. In determining the political question of whether to waive immunity, the Legislature's chief difficulty is to balance the equitable considerations favoring waiver against the fiscal considerations warning against waiver. In connection with sovereign immunity, the Legislature has stated its "interest in managing state fiscal matters through the appropriations process."

Tex. Gov't Code Ann. § 311.034 (Vernon Supp.2004). The Supreme Court has also acknowledged "the Legislature's interest in protecting the State's financial resources." *Wichita Falls State Hosp.* at 701. This interest arises from the fact that "[s]ubjecting the government to liability may hamper governmental functions by shifting tax resources away from their intended purposes toward defending lawsuits and paying judgments." *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex.2002) (plurality op.). Thus, even "when waiving immunity . . ., the Legislature often enacts simultaneous measures to insulate public resources from the reach of judgment creditors." *Wichita Falls State Hosp.* at 698. In this situation the Legislature provided employees with certain benefits under the workers' compensation system but did not waive immunity for suit under the anti-retaliation provisions of the Workers' Compensation Act.

■■■ Limiting the potential liability of TAMU, which can self-insure for workers' compensation coverage, would be a proper consideration in deciding whether to waive sovereign immunity. Accordingly, the determination not to waive sovereign immunity for anti-retaliation suits against TAMU, while waiving it for other state agencies, would have a rational basis. Thus, we overrule Richards's issue.[1]

---

1. We respond briefly to the concurring opinion. To the extent that the concurring opinion states that Richards's "complaint should be addressed to the" Legislature, we heartily agree. "[T]he Legislature is better suited to balance the conflicting policy issues associated with waiving immunity" than are courts. *Wichita Falls State Hosp.*, 106 S.W.3d at 695. To the extent, however, that the concurring opinion concludes that we have no power to grant Richards relief, had we found harmful error, we cannot agree. "In Texas, the bar of sovereign immunity is a creature of the common law and not of any legislative enact-

ment." *Tex. A & M Univ.—Kingsville v. Lawson*, 87 S.W.3d 518, 520 (Tex.2002) (plurality op.) (citing *Hosner*, 1 Tex. at 769). "Historically," courts "have left to the Legislature whether to waive sovereign immunity." *Id.* at 520 (quoting *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 595 (Tex. 2001)). The policy reasons for deferring the political question of the waiver of sovereign immunity to the Legislature are weighty, and they are sound. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 413–15 (Tex.1997) (Hecht, J., concurring). But the Supreme Court has

## CONCLUSION

Having overruled Richards's sole issue, we affirm the trial court's judgment.

Justice BILL VANCE concurring.

BILL VANCE, Justice, concurring.

Richards essentially argues that the *absence* of a statute waiving sovereign immunity as to A & M amounts to a denial of equal protection because the legislature has waived sovereign immunity for workers' compensation retaliation suits under Texas Labor Code Chapter 451, for all state agencies other than the University of Texas and Texas A & M University. I agree to affirm the trial court's judgment of dismissal for want of jurisdiction.

## SOVEREIGN IMMUNITY

It is axiomatic that sovereign immunity protects the State of Texas, its agencies and its officials from lawsuits for damages, absent legislative consent to sue the State. *Federal Sign v. Texas Southern University*, 951 S.W.2d 401, 405 (Tex.1997).

Richards asks us to do something we cannot do: write a statute that waives sovereign immunity for employees of A & M who want to sue for wrongful discharge after filing a compensation claim. *See Lynch v. Port of Houston Auth.* 671 S.W.2d 954, 957 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.) ("Such a drastic and fundamental change [as to abrogate the doctrine of sovereign immunity] should be made, if at all, by the legislature or the Supreme Court."); *see also Miller v. Al-*

"not absolutely foreclosed the possibility that the judiciary may abrogate immunity by modifying the common law." *Wichita Falls State Hosp.* at 696. We cannot confidently conclude that in no case, even in the case of a serious deprivation of constitutional rights, would other considerations outweigh the policy reasons in favor of deference to the Legislature.

*bright,* 523 U.S. 420, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998) (Scalia, J. concurring) ("[T]he Court has no power to provide the relief requested.").

Richards' complaint should be addressed to the legislature. Because the legislature has not abrogated sovereign immunity in this context and the Supreme Court has not addressed it, it remains intact.[1] The trial court's dismissal was correct.