No. 17-0187 - *Morrisey v. W. Va. AFL-CIO, et al.*

Loughry, C. J., concurring:

**FILED**
**September 15, 2017**

**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

The circuit court's issuance of an injunction in this matter was not merely imprudent, but profoundly legally incorrect. Not only did the circuit court utilize an overruled legal standard for the issuance of an injunction, but blithely stated that the respondents' constitutional challenge to West Virginia's "right-to-work" law was "likely" to succeed, entitling them to an injunction. In fact, precisely the opposite was, and is, true: in absence of *any* legal authority supporting its constitutional challenge and in the face of United States Supreme Court holdings undermining their position, the respondents' action fails on all fronts. While the majority opinion largely limits its discussion to the propriety of the injunction and therefore understandably declines a comprehensive discussion of the underlying constitutional challenge, I write separately to demonstrate how fatally unsupported and lacking in merit the respondents' constitutional challenge is, thereby making the circuit court's issuance of an injunction all the more inexplicable.

West Virginia's "Workplace Freedom Act," West Virginia Code § 21-5G-1 to -7 (hereinafter "the Act"), prohibits compulsory union membership and/or compulsory union dues by non-union employees. This Act preserves to the employee whether he or she wishes to participate in the union and prohibits employers from making such membership a condition of employment. The respondents effectively make two constitutional challenges

1

to the Act. First, the respondents claim that the Act infringes on the union's constitutional right of freedom of association under the West Virginia Constitution. Secondly, the respondents claim that the statute effects an unconstitutional taking of union property.

Regarding the freedom of association claim, the respondents assert that by merely allowing employees to *choose* whether to join the union, the Act impairs the union's ability to associate with employees. The United States Supreme Court effectively rejected this argument more than half a century ago. In *Lincoln Federal Labor Union No. 19129, A.F. of L. v. Nw. Iron & Metal Co.*, 335 U.S. 525, 531 (1949), the Supreme Court stated that "[t]he constitutional right of workers to assemble, to discuss and formulate plans for furthering their own self interest in jobs cannot be construed as a constitutional guarantee that none shall get and hold jobs except those who will join in the assembly or will agree to abide by the assembly's plans." Upholding North Carolina's and Nebraska's right-to-work laws, the Supreme Court further held: "Just as we have held that the due process clause erects no obstacle to block legislative protection of union members, we now hold that *legislative protection can be afforded non-union workers*." *Lincoln Fed.*, 335 U.S. at 537 (emphasis added). The ability of states to prohibit compulsory union membership arose within the federal Taft-Hartley Act, enacted in 1947, which *expressly* provides that states may pass laws that prohibit "agreements requiring membership in a labor organization as a condition of employment[.]" 29 U.S.C. § 164(b). Simply put, just as employees have a constitutionally protected right to assemble and belong to a union, non-union members have a commensurate

2

right *not* to belong to the union. Protecting union members' right to join the union neither requires nor permits compulsory membership for those who choose not to join. Right-to-work laws simply protect the non-member's right to decline union membership.

Turning to the respondents' unconstitutional takings claim, they assert that being forced to engage in labor negotiations in absence of a requirement that all employees be dues-paying union members provides non-members with a "free ride." There is little question that this is true; the question is whether this is unconstitutional. It is well-established that a "takings" claim exists only if there is a taking of a *constitutionally protected* property interest. This Court has held that "[a] [constitutionally protected] property interest . . . must derive from private contract or state law, and must be more than the unilateral expectation [.]" Syl. Pt. 3, *Orteza v. Monongalia Cty. Gen. Hosp*., 173 W. Va. 461, 462, 318 S.E.2d 40, 41 (1984) (quoting *Major v. DeFrench*, 169 W. Va. 241, 251, 286 S.E.2d 688, 695 (1982)). However, the respondents have absolutely no entitlement to the fees of non-members; in fact, the United States Supreme Court has expressly stated as much: "[U]nions have no constitutional entitlement to the fees of nonmember-employees." *Davenport v. Washington Educ. Ass'n*, 551 U.S. 177, 185 (2007). The respondents' expectation of compelling fees from non-members is but a "unilateral expectation" insufficient to create a property interest which is constitutionally protected. Simply stated, merely because the Act preserves a non-member's right and ability to decline to participate in union membership does not mean that the Act has "taken" anything to which the unions

3

were entitled: "[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right[.]" *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 549 (1983).

Were it not enough that the Taft-Hartley Act expressly allows for the states to prohibit compulsory union membership and/or dues remittance, the United States Supreme Court has essentially spoken on all critical aspects of this issue. The Supreme Court has addressed the premises underlying the respondents' challenge, as demonstrated above, but has also dealt with it more directly. In *Retail Clerks International Association, Local 1625, AFL-CIO v. Schermerhorn*, 375 U.S. 96, 102-03 (1963), the Supreme Court stated that "even if [a] union-security agreement clears all federal hurdles, the States by reason of [29 U.S.C. 164(b)] have the final say and *may outlaw it.*" (Emphasis added). That is precisely what the Act does. Although the respondents unavailingly split hairs regarding the scope of *Lincoln Federal*, the Supreme Court could scarcely be clearer than when it held that "[t]here cannot be wrung from a constitutional right of workers to assemble to discuss improvement of their own working standards, a further constitutional right to drive from remunerative employment all other persons who will not or can not, participate in union assemblies." 335 U.S. at 525.

In view of the clarity of the Supreme Court's precedent on the underpinnings of the respondents' constitutional challenge, the Seventh Circuit has rejected arguments identical to the respondents' relative to Indiana's right-to-work law. In *Sweeney v. Pence*,

4

the Court rejected takings and associational constitutional challenges to Indiana's right-to-work law, stating:

> There is no doubt that union workers enjoy valuable rights of association and assembly that are protected by the First Amendment. *See, e.g., Thomas v. Collins*, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945). But as in *Lincoln Federal*, that right alone cannot operate as an offensive weapon to wrest rights from others: here, the Hoosier workers whose rights not to associate with the union are protected by the new legislation.

767 F.3d 654, 670 (7th Cir. 2014). Wisely noting that the Taft-Hartley Act, long ago enacted, preserved to the states the ability to enact precisely such laws, the *Sweeney* court observed the quintessentially legislative issues presented by such right-to-work laws and the commensurate limitations of the Court to strike down such legislation:

> [T]he controversy is one that ought to be addressed and resolved at the level of legislative politics, not in the courts. The statutory question posed is whether Indiana's new law is preempted by federal labor law, or threatens the Union's First Amendment rights. The answer is an emphatic no. Right-to-Work laws like Indiana's have existed since before the passage of the Taft-Hartley Act and the inclusion of Section 14(b) of the NLRA. *Congress specifically reserved to the states the power to write and enforce laws of this nature, in accordance with individual states' needs and wisdom. It is not our province to wrest this authority, which has been intact and undisturbed for over sixty-five years, from the states and erase the distinction between right-to-work states and non-right-to-work states.*

*Id.* at 671 (emphasis added).

The clarity of the foregoing leads inexorably to the circuit court's unsubstantiated decision to issue a preliminary injunction. Despite the circuit court's terse

5

and astonishing statement that the respondents had "demonstrated a substantial likelihood of success," it is nevertheless clear that the circuit court granted the injunction under a lax and improper standard. Finding merely that the constitutional challenges were "substantial, serious, and difficult," the circuit court below incorrectly found that a preliminary injunction may issue if the likelihood of harm to plaintiff outweighed the likelihood of harm to defendant, *i.e.* a "balancing of hardships." Critically, this out-dated standard provides that a plaintiff need not show that he or she is likely to succeed before an injunction may issue. *See Blackwelder Furniture Company v. Seilig*, 550 F.2d 189, 195 (4th Cir. 1977) ("If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success."). This standard was expressly overruled by the Fourth Circuit in *Real Truth About Obama, Inc. v. Federal Election Com'n*, 575 F.3d 342 (4th Cir. 2009), *cert. granted, judgment vacated on other grounds*, 559 U.S. 1089 (2010), *and adhered to in part sub nom. The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010): "[T]he *Blackwelder* balance-of-hardship test may no longer be applied in granting or denying preliminary injunctions[.]"

Nevertheless, the circuit court relied on this overruled case and repeatedly echoed its now-defunct holding in finding that the constitutional challenges presented were so "substantial, serious, and difficult," a preliminary injunction was warranted. *See Blackwelder*, 550 F.2d at 195 (granting injunction where questions are "so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus for

more deliberate investigation"). The circuit court's reliance on *Blackwelder* to circumvent the requirement that the respondents demonstrate a "likelihood of success" was undoubtedly because they could not do so, as demonstrated above. Utilizing such ham-handed tactics to enjoin a presumptively constitutional legislative enactment is unseemly, at best. If nothing more than presenting a "serious, substantial, [and] difficult" question was sufficient to enjoin legislation duly enacted by our elected officials, there would be scarcely *any* legislation that would not be immediately enjoined simply by its opponents offering up a whisper of a constitutional challenge in court. Opponents of the legislation could then successfully suffocate duly enacted laws with arcane challenges to the laws which languish, unresolved, at the feet of dilatory or recalcitrant judges. The "likelihood of success" is a required element for issuance of a preliminary injunction for the sole purpose of thwarting such efforts and weeding out toothless claims, such as those raised here.

In short, twenty-eight states have a right-to-work law. *None* has been struck down, much less on the grounds advanced by the respondents. United States Supreme Court precedent has effectively rebuffed all of the challenges and subsidiary positions advanced by the respondents. The respondents have demonstrated *no* likelihood of success and their failure was abetted by the circuit court's use of an overruled, effectively meaningless standard for issuance of a preliminary injunction. This monumental failure of legal reasoning was compounded by extraordinary and baseless delay occasioned by the circuit court. Accordingly, I respectfully concur in the majority's reversal of the preliminary injunction and

7

remand for further proceedings.  I further encourage the circuit court to assiduously avoid further delay and grant this matter its foremost attention.